**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 96-4085

ROLAND DEMINGO QUEEN, a/k/a
Mingo,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
William M. Nickerson, District Judge.
(CR-95-178-WMN)

Argued: September 29, 1997

Decided: December 29, 1997

Before RUSSELL, NIEMEYER, and MOTZ, Circuit Judges.

_____

Affirmed by published opinion. Judge Niemeyer wrote the opinion,
in which Judge Russell and Judge Motz joined.

_____

**COUNSEL**

**ARGUED:** Arcangelo Michael Tuminelli, Baltimore, Maryland, for
Appellant. Andrew George Warrens Norman, Assistant United States
Attorney, Baltimore, Maryland, for Appellee. **ON BRIEF:** Lynne A.
Battaglia, United States Attorney, Baltimore, Maryland, for Appellee.

_____

**OPINION**

NIEMEYER, Circuit Judge:

The primary issue raised in this appeal is whether evidence of the defendant's prior acts of witness tampering were properly admitted under Federal Rule of Evidence 404(b) to prove the element of intent in a later prosecution for a separate act of witness tampering in violation of 18 U.S.C. § 1512(b)(1). Because we conclude, after a full examination of our Rule 404(b) jurisprudence, that the district court did not abuse its discretion in admitting the evidence, and because we reject the defendant's other assignments of error, we affirm.

I

On August 8, 1995, a grand jury returned a superseding indictment charging Roland D. Queen with conspiring to tamper with a witness in violation of 18 U.S.C. § 371 and with tampering with a witness in violation of 18 U.S.C. § 1512(b)(1). The indictment alleged that during the period from February 1994 to March 1995 Queen had illegally attempted to dissuade a witness named Feronica Isaacs from testifying in the drug trafficking trial of Stephen Hester and others.

Before trial, the government notified Queen that it intended to introduce evidence at trial indicating that Queen had tampered with witnesses in 1986. In response, Queen filed a motion in limine to exclude that evidence under Federal Rules of Evidence 404(b) and 403. At a pretrial hearing on the motion, the government presented two witnesses whom it intended to have testify to the 1986 conduct. According to one witness, before Queen's 1986 trial for armed robbery, Queen threatened to shoot him if he testified against Queen at trial, and according to the other, before the same trial Queen had threatened to "deal with" him for his role in alerting the authorities to Queen's involvement in the armed robbery. The district court denied the motion in limine, ruling that the government's evidence of prior acts was admissible under Federal Rule of Evidence 404(b) to show intent for the crimes charged and that, under Federal Rule of Evidence 403, the testimony would not be unduly prejudicial.

2

At trial, in addition to introducing evidence of Queen's prior acts of witness tampering, the government introduced evidence of a conspiracy between Queen and Hester to tamper with witnesses before and during Hester's trial. It presented evidence of threatening actions that Hester had taken towards Isaacs, of menacing glares that Queen had made towards witnesses testifying against Hester on the witness stand, and of a meeting that Queen had with Isaacs on her doorstep where Queen allegedly threatened Isaacs, telling her that it would be in her best interest not to testify against Hester, and attempted to bribe her not to testify. Although Queen admitted that he had visited Isaacs and had spoken with her, he denied that he had threatened or bribed her. He maintained that he visited Isaacs only to suggest that she visit Hester's attorney. In instructing the jury, the district court told the jury not to consider Queen's prior acts evidence for any purpose other than to infer intent as to the charged crime.

The jury returned a verdict of guilty on both counts charged, and the court sentenced Queen to 174 months imprisonment. In sentencing Queen, the court adjusted his offense level upward by two levels for perjury committed during trial, finding:

> I am satisfied by a preponderance that Mr. Queen's testimony was false in respect to the purpose of his visit to Miss Isaacs and with respect to his actions, which I find were, in fact, designed to dissuade her from testifying or from testifying truthfully, and, as such, constituted perjury; and that Mr. Queen gave false testimony to the Court and the jury under oath, and knowing it to be false and material, obviously to the issues, [which] were under inquiry.

This appeal followed.

II

As his principal argument on appeal, Queen contends that the district court abused its discretion in admitting the evidence that he had twice intimidated witnesses before his 1986 armed robbery trial. Queen argues that such evidence could only have demonstrated his propensity to commit witness tampering in this case and therefore is prohibited by Federal Rule of Evidence 404(b). In order to bolster its

claim that Queen threatened Isaacs, the government had offered evidence of the prior acts to show Queen's "intent, knowledge and lack of mistake in visiting Feronica Isaacs" to threaten her at her doorstep. The district court ruled, following a full pretrial evidentiary hearing, that Queen's prior acts were relevant to whether his words to Isaacs were spoken with an intent to intimidate. Although the court, while applying Federal Rule of Evidence 403, acknowledged that the prior-acts testimony contained a prejudicial aspect, it explained that the evidence "is prejudicial because it is so highly probative."

The question of whether evidence of prior acts is admissible under Federal Rule of Evidence 404(b) is frequently presented to our court.[1] That fact suggests that as we address the issue again, we attempt to provide yet a clearer standard for the rule's application.

We begin with the general proposition that any evidence which tends to make the existence of a fact of consequence to an issue in the case "more probable or less probable" than without the evidence is relevant and therefore, as a general proposition, admissible. Fed. R. Evid. 402, 401. But even relevant evidence may be excluded if its probative value is "substantially outweighed" by the potential for undue prejudice, confusion, delay or redundancy. Fed. R. Evid. 403. Prejudice, as used in Rule 403, refers to evidence that has an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403 advisory committee's note; see also United States v. Powers , 59 F.3d 1460, 1467 (4th Cir. 1995) (ruling that prejudice is shown only where court believes the evidence will unduly excite the emotions of the jury and thereby cause it to act irrationally).

Against these general principles, Federal Rule of Evidence 404(b) recognizes the potentially probative value of evidence about prior "crimes, wrongs, or acts." The rule specifies that such evidence is generally admissible except when it is offered to prove "the character of a person in order to show action in conformity therewith."[2]

_____

[1] We have found over 60 published opinions since 1990 addressing the rule.

[2] Federal Rule of Evidence 404(b) provides in full:

4

Because the rule recognizes the admissibility of prior crimes, wrongs, or acts, with only the one stated exception, it is understood to be a rule of inclusion, see United States v. Aramony , 88 F.3d 1369, 1377 (4th Cir. 1996), cert. denied, 117 S. Ct. 1842 (1997); United States v. Russell, 971 F.2d 1098, 1106 (4th Cir. 1992), authorizing evidence of prior acts for purposes other than character, such as "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). **3** As a rule of inclusion,

_____

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

**3** Indeed, this circuit has found prior act evidence admissible for a wide range of reasons unrelated to character. See, e.g., United States v. Sanchez, 118 F.3d 192, 195 (4th Cir. 1997) (holding prior drug deals admissible to prove knowledge of the drug trade); Aramony, 88 F.3d at 1378 (holding evidence of defendant's previous sexual advances towards women admissible to show motive in fraudulent scheme to use company funds for personal relationships); United States v. Ford, 88 F.3d 1350, 1362 (4th Cir.), cert. denied, 117 S. Ct. 496 (1996) (holding prior arrest in connection with an undercover drug buy admissible to show intent to distribute narcotics); United States v. Hayden , 85 F.3d 153, 159 (4th Cir. 1996) (holding evidence of prior witness intimidation admissible to show criminal intent and guilty conscience); United States v. Morsley, 64 F.3d 907, 911-912 (4th Cir. 1995) (holding prior act testimony admissible to establish the identity behind an alias); United States v. Tanner, 61 F.3d 231, 237 (4th Cir. 1995) (holding prior acts of illegal drug distribution admissible to show modus operandi, knowledge, and absence of mistake); United States v. Boyd, 53 F.3d 631, 636-37 (4th Cir. 1995) (holding evidence of prior drug use admissible to show motive and the nature of the defendant's relationship with co-conspirators); United States v. Bengali, 11 F.3d 1207, 1213 (4th Cir. 1993) (admitting testimony of defendant's prior extortionate acts to show motive, intent, and plan); Russell, 971 F.2d at 1106-07 (holding evidence of defendant's extramarital affairs and discharge from the Marine Corps admissible to show motive in the murder of defendant's wife).

5

the rule's list is not exhaustive. See United States v. Rawle, 845 F.2d 1244, 1247 (4th Cir. 1988).

The exception to admissibility under Rule 404(b) prohibits proof of a defendant's character to show conduct in conformity therewith because evidence of a person's character supplies an inadequate causal link between it and the specific conduct sought to be established. The fact that totally different types of conduct may follow from a single type of character leaves proof of character too general, ambiguous, and uncertain to prove specific conduct. But that realization does not disqualify evidence of earlier specific states of mind from proving a later similar state of mind. Thus, just as Federal Rule of Evidence 406 recognizes the probative value of repetitive conduct, authorizing the admission of evidence about habit and routine practice, Rule 404(b) recognizes the probative value of willful states of mind. However, because of the complex and difficult distinction between evidence of character and evidence of, for example, intent or motive, the broad discretion generally given to trial judges in regulating the admissibility of evidence is, under Rule 404(b), more restricted. Thus, we have articulated a four-prong test of admissibility for prior-act evidence: (1) the prior-act evidence must be relevant to an issue other than character, such as intent; (2) it must be necessary to prove an element of the crime charged; (3) it must be reliable; and (4) as required by Federal Rule of Evidence 403, its probative value must not be "substantially outweighed" by its prejudicial nature. See, e.g., Rawle, 845 F.2d at 1247. Notwithstanding the greater care required in admitting evidence of prior acts, we still review a district court's determinations of the admissibility of evidence under Rule 404(b) for abuse of discretion, as we do generally for evidentiary rulings. See, e.g., United States v. Greenwood, 796 F.2d 49, 53 (4th Cir. 1986).

Notwithstanding our test for application of Rule 404(b), the decisions applying the test to determine whether prior-act evidence is probative of intent appear to lack consistency, perhaps because the rule's underlying principles are so elusive. For example, in United States v. Mark, 943 F.2d 444, 448 (4th Cir. 1981), we held that evidence of a defendant's involvement in prior drug transactions was admissible to prove intent in later drug trafficking incidents. Similarly, in United States v. Bailey, 990 F.2d 119, 124 (4th Cir. 1993), we held it permis-

6

sible for a district court to admit a defendant's prior acceptances of bribes in order to prove intent in a prosecution for vote-selling. Indeed, we have noted that "when <u>intent</u> to commit a crime is at issue, we have regularly permitted the admission of prior acts to prove that element." <u>Sparks v. Gilley Trucking Co.</u>, 992 F.2d 50, 52 (4th Cir. 1993). On the other hand, we have also held that evidence of prior drug transactions was inadmissible to demonstrate intent in a prosecution for other drug transactions when the former transactions were unrelated to the charges contained in the indictment. <u>See United States v. Hernandez</u>, 975 F.2d 1035, 1040 (4th Cir. 1992). And similarly, in <u>United States v. Sanders</u>, 964 F.2d 295, 298-99 (4th Cir. 1992), we held that a conviction for an earlier assault was inadmissible to show intent for a later charge of assault even where the defendant had placed intent at issue by pleading self-defense to the later charge.

These seemingly contradictory holdings have led to some confusion over what principles should be used to guide courts' discretion in considering evidence under Rule 404(b). Accordingly, it will be instructive to identify the dangers that Rule 404(b) was intended to avoid.

The principal danger that Rule 404(b) targets is addressed by the language of the rule itself -- that defendants not be convicted simply for possessing bad character. <u>See Michelson v. United States</u>, 335 U.S. 469, 475-76 (1948) (explaining that propensity evidence is excluded because it might "overpersuade" a jury and cause them to "prejudge one with a bad general record"); <u>Wigmore on Evidence</u> § 58.2, at 1215 (Tillers rev. 1983) (noting the concern courts have felt over "the overstrong tendency to believe the accused guilty of the charge merely because he is a likely person to do such acts"). This danger is compounded by the idea that juries might face defendants whom the government has brought forth merely because it has "rounded up the usual suspects" who have a history of prior bad acts.[4]

_____

[4] The archetype of this practice appears at the conclusion of the movie <u>Casablanca</u>, where Police Captain Louis Renault, in attempting to demonstrate a response to the politically sensitive murder of Major Strasser, simply instructs his deputies to "round up the usual suspects."

7

There are two other dangers that Rule 404(b) addresses. First, it protects against juries trying defendants for prior acts rather than charged acts, and guards against juries becoming confused by the purpose of the admitted acts and using the acts improperly in arriving at a verdict. See Michelson, 335 U.S. at 475-76; Wigmore, supra, at 1215 (noting "the tendency to condemn not because the accused is believed guilty of the present charge but because he has escaped unpunished from other offenses"). And second, it protects against the "trial by ambush" that would occur if one were confronted at trial not only with acts alleged in the indictment but also with prior acts from the span of one's entire lifetime. Such a trial would be nearly impossible to prepare for effectively. Indeed, the history of the limitation on other-act evidence indicates that the genesis of the exclusion arose in response to abuses in the seventeenth-century English courts, particularly the Star Chamber. See Thomas J. Reed, Trial by Propensity: Admission of Other Criminal Acts Evidenced in Federal Criminal Trials, 50 U. Cin. L. Rev. 713, 716 (1981). In the Star Chamber, prosecutors prepared the evidence for unspecified charges in advance of trial, giving defendants little opportunity to reply or defend. Id. Worried about such abuses, English courts began, not long after the abolition of the Star Chamber, to place limitations on evidence presented outside the scope of the charge. See Wigmore, supra, § 58.2, at 1213-16 nn.1-2.

Even though Rule 404(b) recognizes the existence of these dangers and seeks to minimize their risk, it also recognizes that "[e]xtrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct." Huddleston v. United States, 485 U.S. 681, 685 (1988). Once an act is assumed to be done, "the prior doing of other similar acts . . . is useful as reducing the possibility that the act in question was done with innocent intent. The argument is based purely on the doctrine of chances, and it is the mere repetition of instances . . . that satisfies our logical demand." Wigmore on Evidence, § 302, at 245 (Chadbourn rev. 1979)(footnote omitted). But in order for repeated actions to have probative value, the earlier actions must be similar in nature to the charged acts. Mark, 943 F.2d at 448; Rawle, 845 F.2d at 1247 n.3; Wigmore, supra, at 245 ("[T]he essence of this probative effect is the likeness of the instance"). This

8

similarity may be demonstrated through physical similarity of the acts or through the "defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic offense and charged offenses." United States v. Beechum, 582 F.2d 898, 911 (5th Cir. 1978). The more similar the extrinsic act or state of mind is to the act involved in committing the charged offense, the more relevance it acquires toward proving the element of intent. Furthermore, when only a defendant's similar acts are introduced, the concern that a defendant is being tried merely for having a bad character is somewhat allayed. The similarity of the acts not only provides a logical nexus between the extrinsic act and the charged act, but also provides a cognizable divide between the kinds of evidence that are introduced to show a particular intent and those that are introduced only to show a much more generalized intent (and therefore propensity to commit crime in general). See Wigmore, supra , at 247 n.5 (stating that where courts admit dissimilar other crime evidence, "the inference of intent arises only if the inference of bad character is first drawn").

Thus, when the mental state of a defendant is at issue, similar acts that do not strongly implicate the dangers that Rule 404(b) was designed to protect against may be admitted as evidence relevant to and probative of intent. For example, in cases where identity is not at issue, the fear that the defendant is on trial for being a "usual suspect" diminishes. In cases where the trial judge has given a limiting instruction on the use of Rule 404(b), the fear that the jury may improperly use the evidence subsides. And in cases where the prosecution has notified the defendant of its intent to use particular Rule 404(b) evidence and where there is no evidence that the prosecution is placing the defendant's entire earlier life on trial, the fear of a "trial by ambush" recedes.

These observations about the purposes of Rule 404(b) suggest further qualifications to the test we articulated in Rawle. Thus, we hold that evidence of prior acts becomes admissible under Rules 404(b) and 403 if it meets the following criteria: (1) The evidence must be relevant to an issue, such as an element of an offense, and must not be offered to establish the general character of the defendant. In this regard, the more similar the prior act is (in terms of physical similarity or mental state) to the act being proved, the more relevant it becomes. (2) The act must be necessary in the sense that it is proba-

9

tive of an essential claim or an element of the offense. (3) The evidence must be reliable. And (4) the evidence's probative value must not be substantially outweighed by confusion or unfair prejudice in the sense that it tends to subordinate reason to emotion in the factfinding process. Also, additional protection against the pitfalls the rule protects against may be provided by (1) a limiting jury instruction, when requested by a party, explaining the purpose for admitting evidence of prior acts, and (2) the requirement in a criminal case of advance notice, when so requested, of the intent to introduce prior act evidence. When Rule 404(b) is administered according to these rules, it will not, we believe, be applied to convict a defendant on the basis of bad character, or to convict him for prior acts, or to try him by ambush. But it will yet allow the admission of evidence about similar prior acts that are probative of elements of the offense in trial.

Turning now to the case before us, the evidence of Queen's prior acts in witness tampering was specifically offered to prove the intent element essential to proving witness tampering under 18 U.S.C. § 1512(b)(1); it was not offered to prove Queen's character as a bad actor or a criminal. Indeed, the high degree of similarity between the prior acts and the act with which Queen was charged supports the finding that the acts were relevant to intent. Moreover, the district court wisely instructed the jury that it could only consider the prior-act evidence to infer the element of intent. Because we believe that the jury could reasonably have taken the similar prior acts as evidence tending to make it less probable that Queen's intent in visiting Isaacs was for an innocent purpose, the evidence was relevant.

Queen argues, however, that the evidence could only be used to prove character because intent was not truly at issue in this case. He notes that he offered to stipulate that if the jury found Isaacs' testimony that Queen threatened and attempted to bribe her to be true, then the government would have demonstrated the requisite intent. Thus, he argues, it is not intent that is at issue but witness credibility. As we understand this argument, Queen attempts to preclude the admission of prior-acts evidence by his conditional stipulation to the intent element. The government, however, did not agree to this stipulation, nor was it required to do so. Not only could a conditional stipulation become a source of jury confusion, but also, and perhaps more importantly, the government, which has the burden of proving every

10

element of the crime charged, must have the freedom to decide how to discharge that burden. It could well have believed that prior-act evidence was necessary, in view of attacks on witness credibility, to bolster its proof of intent.

Queen also argues that the government never showed that nine-year old evidence of intent was probative of intent in this case. That argument amounts to a contention that the 1986 evidence was not relevant because it did not make Queen's intent more probable than without the evidence. See Fed. R. Evid. 401. The rules of evidence give trial judges broad discretion in evaluating whether evidence is probative, requiring only a "plus value" to make it admissible. Wigmore, supra, § 29, at 976 (Tillers rev. 1983). Once admitted, its value or weight is determined by the jury. As Professor Wigmore characterizes that interplay,

> the evidentiary fact offered does not need to have strong, full, superlative, and probative value and does not need to involve demonstration or to produce persuasion by its sole and intrinsic force but merely needs to be worth consideration by the jury. It is for the jury to give the fact the appropriate weight in effecting persuasion.

Id. We believe that the evidence of prior similar acts offered in this case to prove a substantive element of an offense are "worth consideration" by a jury and that the district court did not abuse its discretion in finding nine-year-old evidence probative to some positive degree, particularly when the defendant has spent many of those intervening nine years in prison.

Having affirmed, therefore, that the prior act testimony was relevant, we move on to consider whether the district court properly determined that the evidence met the other prongs of our four-part test, that is, whether it was necessary, reliable, and properly balanced under Rule 403.

Evidence is necessary where, considered in the "light of other evidence available to the government," United States v. DiZenzo, 500 F.2d 263, 266 (4th Cir. 1974), it is an "essential part of the crimes on trial, or where it furnishes part of the context of the crime." Mark, 943

11

F.2d at 448 (internal citation and quotation marks omitted). In this case, the government presented the prior-act evidence in order to prove intent, which is an essential element of the crime charged. Because the government's case for intent rested solely on the testimony of Isaacs and one other witness, the similar prior-act evidence was important in making the case that Queen possessed the requisite intent to tamper with witnesses. The evidence was, therefore, "necessary."

There was also sufficient evidence that the witnesses testifying to the prior acts were reliable. Both were cross-examined prior to trial and both had testified to Queen's threats against them before the earlier trial. Queen argues that the witnesses' reliability was damaged because the two witnesses were testifying pursuant to agreements for favorable treatment in their cases. We have noted, however, that while a defendant may always impugn witnesses' credibility on the basis of bias, "there is the countervailing consideration that self-exposure to a perjury charge is unlikely. The plea bargainer's position frequently makes him extremely reluctant to commit another crime or crimes and thus lay himself open to greater punishment." United States v. Hadaway, 681 F.2d 214, 218 (4th Cir. 1982).

Finally, in weighing the evidence under Rule 403, the district court concluded that while it was prejudicial, it was only prejudicial because it was so highly probative. There is no suggestion that the prior testimony would invoke emotion in place of reason as a decisionmaking mechanism. Moreover, there is no evidence that the prior testimony tended to cause any confusion with respect to the charges actually lodged against Queen.

The other historical dangers addressed by Rule 404(b) -- risk of juror confusion and trial by ambush -- were never present in this case and were not the basis of Queen's challenge. Any potential for confusion that the prior acts were the actual acts charged in this case was certainly eliminated by the court's instruction to the jury, if it was not eliminated by the arguments of counsel. And the government provided Queen with advance notice of the evidence, allowing him the opportunity not only to prepare adequately but also to cross-examine the proffered witnesses.

12

For the foregoing reasons, we conclude that the district court properly applied both Rule 404(b) and Rule 403 and did not abuse its discretion in admitting the evidence of Queen's prior acts.

III

Queen also contends that the district court erred in instructing the jury that it could find a conspiracy beginning anytime "within or reasonably near to the [time] window" alleged in the indictment. He argues that the jury must find that the conspiracy began near the starting date alleged in the indictment, and not simply near any date in the time window. Alternatively, he argues that if the jury could find that a conspiracy began much later than the alleged starting date, then the district court should have limited the use of evidence of Hester's actions before that date. Finally, he argues that the district court should have at least instructed the jury that his attorney was not at fault for arguing that it could not find a conspiracy that began substantially later than the starting date alleged in the indictment.**5**

_____

**5** The district court instructed the jury:

> [T]he charges that are set out in the indictment regarding the conspiracy count, indicate that the offense was committed on or about a certain date or dates, but the proof need not establish with certainty the exact date of the alleged offense. It is sufficient if the evidence establishes beyond a reasonable doubt the offense was committed on a date reasonably near the date alleged.

During deliberations, the jury asked the court whether the conspiracy needed to begin near the starting date mentioned in the indictment or only within the window created by the starting and ending dates. Over objection, the court submitted the following answer to the jury:

> With respect to the conspiracy charge, if you find beyond a reasonable doubt that a conspiracy as charged in the indictment came into existence at any point in time within or reasonably near to the window from February 1994 to March 1995, and that Mr. Queen knowingly joined in the conspiracy at some point within or reasonably near to that same window, then the first two elements of proof as to the conspiracy charge are satisfied.

The court then rejected suggested supplemental instructions that the defense counsel's statements in closing argument had been accurate as to the original instruction.

13

Although we have not previously addressed in any comprehensive way the issue of whether the trier of fact must find that the starting date of a conspiracy coincide with the starting date alleged in the indictment, we conclude that it need not do so. Rather, the trier of fact may find that the starting date of a conspiracy begins anytime in the time window alleged, so long as the time frame alleged places the defendant sufficiently on notice of the acts with which he is charged. Cf. Harms v. United States, 272 F.2d 478, 482 (4th Cir. 1959) (holding that an instruction that limited the jury's ability to find a conspiracy to finding conspiracies starting 14 months after the starting date alleged in the indictment was proper); Berger v. United States, 295 U.S. 78, 82 (1935). The indictment in this case specifically alleges which acts were part of the ongoing conspiracy. It mentions the name of the witness who was the object of tampering, suggests a number of events in the conspiracy, and names a co-conspirator. Queen was sufficiently on notice of both of the charges against him to enable him to defend himself effectively and to prevent re-prosecution for the same offense. See United States v. Smith, 44 F.3d 1259, 1263-64 (4th Cir. 1995). Against this background, the district court did not err in instructing the jury that it could find that the acts occurred anytime within the alleged window.

In any event, the error that Queen assigns would not affect the disposition of this case. In order for a variance between the initial charge and the instruction given to the jury to be reversible error, it must affect the substantial rights of the defendant. Kotteakos v. United States, 328 U.S. 750, 756 (1946); Berger, 295 U.S. at 82. Minor discrepancies from the indictment do not create reversible error, United States v. Fletcher, 74 F.3d 44, 53 (4th Cir. 1996), and "[w]here a particular date is not a substantive element of the crime charged, strict chronological specificity or accuracy is not required," United States v. Kimberlin, 18 F.3d 1156, 1159 (4th Cir. 1994), quoting United States v. Morris, 700 F.2d 427, 429 (1st Cir. 1983). In this case, the specificity of the indictment's allegations "fairly [apprised] the defendant of the crimes with which he was charged," Kimberlin, 18 F.3d at 1159, quoting Land v. United States, 177 F.2d 346, 348 (4th Cir. 1949), and the date of the conspiracy was not a substantive element of the crime of conspiracy. Even if an improper variance had existed, it would not have impinged on Queen's substantial rights.

14

Furthermore, the district court's decision not to give the defendant's offered limiting instructions to the jury was a reasonable exercise of its discretion. "A district court's refusal to provide an instruction requested by a defendant constitutes reversible error only if the instruction: `(1) was correct; (2) was not substantially covered by the court's charge to the jury; and (3) dealt with some point in the trial so important, that failure to give the requested instruction seriously impaired the defendant's ability to conduct his defense.'" United States v. Lewis, 53 F.3d 29, 32 (4th Cir. 1995), quoting United States v. Camejo, 929 F.2d 610, 614 (11th Cir. 1991) (internal quotations omitted). Because we find that the instruction did not seriously impair Queen's ability to defend himself, we need not address whether the instructions satisfied the first two elements of the test articulated in Lewis.

Queen's request for a limitation on the evidence of Hester's earlier acts was not of sufficient importance as to have significantly impaired his ability to defend himself. Queen was aware that evidence of Hester's acts would be introduced at trial because the indictment charged that Hester's acts were part of the conspiracy. Furthermore, the government presented ample evidence for the period of March 1995 alone to convict Queen of conspiracy. Indeed, the jury's question suggests that its concern was whether it could find a conspiracy only from events after the start of the indictment's time frame. In these circumstances, we cannot find that the trial court's failure to limit the use of Hester's early acts was so important as to have seriously diminished Queen's ability to defend himself.

Similarly, the district court's decision not to explain to the jury that Queen's attorney had, during his closing argument, relied on ambiguous language in the original instruction was a permissible exercise of discretion. Although the supplemental instruction may have undermined defense counsel's argument, the instruction stated the law properly. We do not reverse judgments for jury instruction errors where "the charge was not misleading and contained an adequate statement of the law." United States v. United Med. and Surgical Supply Corp., 989 F.2d 1390, 1407 (4th Cir. 1993), quoting United States v. Park, 421 U.S. 658, 675 (1975). Furthermore, the instruction did not refer either to counsel or to counsel's argument. Instead, the

15

instruction fairly responded to the jury question in a non-prejudicial manner. See id.

IV

Finally, Queen challenges his sentence, contending that the district court, in adjusting his offense level upward by two levels based on perjury, failed to make findings detailed enough to satisfy the requirements for an upward adjustment outlined in United States v. Dunnigan, 507 U.S. 87 (1993).

Under Dunnigan, in order to make an adjustment for perjury, a court must find that all of the elements of perjury were present in the defendant's testimony. That is, the court must find that the defendant's testimony was untruthful as to a material matter, and that the false testimony was willful. Id. at 94-95. Although "it is preferable for a district court to address each element of the alleged perjury in a separate and clear finding," id. at 95, the court may nevertheless make the upward adjustment whenever it finds all three elements of perjury. Here, the district court found that Queen's testimony was "false" and that Queen gave this false testimony, "knowing it to be false and material." That, we conclude, is sufficient.

Accordingly, we affirm Queen's conviction and sentence.

AFFIRMED

16