**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                          No. 98-4843

JUAN RAMIREZ MATA,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Richard L. Williams, Senior District Judge.
(CR-98-206)

Submitted: June 15, 1999

Decided: June 25, 1999

Before MURNAGHAN, HAMILTON, and LUTTIG,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

James F. Sumpter, JAMES F. SUMPTER, P.C., Richmond, Virginia,
for Appellant. Helen F. Fahey, United States Attorney, N. George
Metcalf, Assistant United States Attorney, M. Hannah Lauck, Assis-
tant United States Attorney, Richmond, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Juan Ramirez Mata appeals his conviction for possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (1994) and 18 U.S.C. § 2 (1994). We find no error and affirm.

I

As part of an undercover operation, Sam Cross, a paid police informant who speaks fluent Spanish, conducted drug deals with Gustav Espinoza in Kearnsville, North Carolina. In January 1998, Espinoza asked Cross to pick up a large load of marijuana in Atlanta. Cross and an undercover police officer picked up four duffel bags and were directed by the Atlanta contact to deliver them to Richmond, Virginia. Once in Richmond, Cross and the officer paged the number provided by the Atlanta contact. The person paged called back, and a meeting was set up in a nearby parking lot. Mata arrived soon thereafter and directed Cross and the officer to drive to a house where Mata and another man unloaded the bags from the car. After returning to the parking lot, Mata paid Cross $500 as had been promised by the Atlanta contact. Mata was arrested as he was leaving the lot, and a pager with the number given to the informant by the Atlanta contact was found on his person.

Mata admitted that he picked up the bags and paid the informant, but alleged he did so only as a favor to a man named David and that he did not know the contents of the bags. The jury convicted Mata of the charged offense. On appeal, Mata contends that the trial court erred in refusing to give one of his proffered jury instructions and that the interpreter services afforded him during trial were inadequate.

II

There was no dispute about the quantity of marijuana in the duffel bags, and the district court instructed the jury it could "consider that

2

possession of large quantities of an illegal drug supports an inference of intent to distribute." (J.A. 199). Mata's counsel elicited testimony that no evidence of distribution, such as scales or packaging materials, was discovered at the house to which Mata delivered the duffel bags. Mata concedes that the jury was properly permitted to infer an intent to distribute from the weight of the drugs alone. He contends, however, that the court abused its discretion in refusing to give his proposed instruction, which reads in relevant part as follows:

> Basically, what you are determining is whether the drugs in the defendant's possession were for his personal use or for the purpose of distribution. Often it is possible to make this determination from the quantity of drugs found in the defendant's possession.
>
> The possession of a large quantity of narcotics does not necessarily mean that the defendant intended to distribute them. On the other hand, a defendant may have intended to distribute narcotics even if he did not possess large amounts of them. Other physical evidence, such as paraphernalia for the packaging or processing of drugs, can show such an intent. There might be evidence of a plan to distribute. You should make your decision whether the defendant intended to distribute the narcotics in his possession from all the evidence presented.

(J.A. 10-11) (emphasis added). Mata argues that due process requires that the jury should have been specifically told that it could consider "other physical evidence" or "evidence of a plan to distribute" in its deliberations.[1]

_____

[1] We conclude that this issue is distinct from any issue regarding a lesser-included offense instruction. Even if such an issue were properly before the court on appeal, it is meritless. A defendant has a right to an instruction on a lesser-included offense "if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater." Keeble v. United States, 412 U.S. 205, 208 (1973). In the context of drug distribution cases, we have held that such an instruction must be given "unless, as a matter of law, the evidence would `rule out the possibility of a finding of simple possession,[because the quantity of

3

We will not reverse on the ground that the trial court refused to give an instruction requested by a defendant unless the instruction: "(1) was correct; (2) was not substantially covered by the court's charge to the jury; and (3) dealt with some point in the trial so important that failure to give the requested instruction seriously impaired the defendant's ability to conduct his defense." United States v. Queen, 132 F.3d 991, 1000 (4th Cir. 1997) (citations omitted). We conclude the court did not abuse its discretion based upon these criteria.

Mata's requested instruction is correct; a jury is free to consider any evidence or lack of evidence regarding drug distribution equipment or a distribution network. However, the jury was properly instructed that it should "carefully and impartially consider all the evidence in the case." (J.A. 190). Indeed, in closing argument to the jury, Mata's counsel noted the lack of the usual indicia of a distribution network, such as guns and baggies. The court was not required to specifically list every aspect of the evidence that the jury could consider.

Mata's only defense was that he was unaware that the bags contained a controlled substance. This defense, coupled with his conces-

_____

drugs found was] so huge as to require that the case proceed on the theory that the quantity conclusively has demonstrated an intent to distribute.'" United States v. Baker, 985 F.2d 1248, 1259 (4th Cir. 1993) (quoting United States v. Levy, 703 F.2d 791, 793 n.7 (4th Cir. 1983)). This is precisely what the district court ruled in Mata's case: "And let me tell you [counsel] now, because of the quantity of drugs involved in here, you won't get a lesser included offense. If the jury--because there is no way anybody gets two hundred kilos or hundred kilos for their own personal habits." (J.A. 175). Mata's counsel conceded the point during closing argument to the jury: "Obviously, you can't use 210 pounds. You have to get rid of it." (J.A. 186). Moreover, there was no "affirmative evidence unrelated to drug quantity from which the[jury] could have reasonably inferred that the defendant possessed the drugs solely for personal use." United States v. Wright, 131 F.3d 1111, 1115-16 (4th Cir. 1997), cert. denied, ___ U.S. ___, 66 U.S.L.W. 3782 (U.S. June 8, 1998) (No. 97-9034). Given the undisputed facts and the defendant's concession, there was no possibility of a reasonable inference of simple possession.

4

sion that the large quantity of drugs precluded an instruction on the lesser-included offense of simple possession, supports a conclusion that rejection of the instruction did not impair Mata's defense. We therefore find no abuse of discretion in the court's refusal of the proffered instruction.

III

In a motion to vacate the verdict, Mata contended that Spanish interpreters at his trial were unable to either effectively interpret the proceedings for him during trial or to translate his testimony for the court. In an affidavit attached to the motion, Mata's lawyer averred that he only discovered the problem when one of the interpreters admitted she was unable to translate some of the legal terms used at the trial.

The court found that it appeared Mata did not receive continuous word-for-word translation during the trial as required by statute. Nevertheless, the court denied the motion based upon three factors: the lack of objection to the quality of the translation during trial, the overwhelming evidence of guilt, and the defendant's "passing" familiarity with the English language. We find no error in this ruling.

Mata's first language is Spanish. Under the Court Interpreters Act, 28 U.S.C.A. § 1827 (West 1994 & Supp. 1999), a criminal defendant is entitled to an interpreter if he speaks "only or primarily a language other than the English language." Because the trial court is best positioned to evaluate the need for an interpreter, a decision to refuse to appoint one is reviewed for abuse of discretion, see United States v. Coronel-Quintana, 752 F.2d 1284, 1291 (8th Cir. 1985), and the trial court must be given "wide discretion" in evaluating the adequacy of the interpreter's efforts. Valladares v. United States, 871 F.2d 1564, 1566 (11th Cir. 1989). "The ultimate question is whether any inadequacy in the interpretation made the trial fundamentally unfair." Id. (internal quotation omitted).

The court's finding that Mata had at least a marginal understanding of English is supported by the record. Some of the conversation between Mata and the undercover police officer, which was recorded on tape, was in English. In addition, Mata sometimes responded to

5

questions at trial in English before the question was translated by the interpreter.

The lack of objection during trial weighs heavily against granting relief to Mata. See Valladares, 871 F.2d at 1566 ("To allow a defendant to remain silent throughout trial and then, upon being found guilty, to assert a claim of inadequate translation, would be an open invitation to abuse."). Defense counsel's explanation that he only found out about the possible translation problems after trial is not corroborated by any evidence from Mata or the interpreters. Moreover, there is no particularized showing that the allegedly deficient translation prejudiced Mata in any way. See, e.g., United States v. Gomez, 908 F.2d 809, 811 (11th Cir. 1990) (explaining how specific translating error resulted in prejudice to the defendant).

The trial court also noted the overwhelming evidence of guilt. Mata was arrested after he (1) was paged at the number provided by the Atlanta drug dealer; (2) received four large duffel bags containing 210 pounds of marijuana; and (3) paid the informant $500 for the delivery. In light of this evidence, we are confident that any translation problems that may have occurred did not render the trial "fundamentally unfair." United States v. Joshi, 896 F.2d 1303, 1309 (11th Cir. 1990). We thus find no reversible error in the trial court's denial of Mata's motion for a new trial.[2] We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

_____

[2] Although Mata filed a "Motion to Vacate the Verdict," we agree with the Government that it is properly construed as a motion for a new trial under Rule 33 of the Federal Rules of Criminal Procedure.

6