**UNITED STATES of America,**

v.

**Steven Keith ADAIR, Defendant.**

**No. CR. 702CR00035.**

United States District Court,
W.D. Virginia,
Roanoke Division.

Oct. 28, 2002.

Anthony Franklin Anderson, Roanoke, VA, Melissa Windham Windham Friedman, Roanoke, VA, for Defendant.

John Leslie Brownlee, U.S. Atty's Office, Roanoke, VA, for U.S.

### MEMORANDUM OPINION

WILSON, Chief Judge.

Defendant Steven Keith Adair is charged in a three count superseding indictment with (1) knowingly and willfully threatening the life of the President or Vice–President of the United States in violation of 18 U.S.C. § 871(a); (2) willfully threatening or maliciously conveying knowingly false information of an attempt to kill the President or Vice–President and of an attempt to damage or destroy buildings or property by means of fire or explosives in violation of 18 U.S.C. § 844(e); and (3) knowingly producing, using or trafficking in a counterfeit credit card in viola-

tion of 18 U.S.C. § 1029(a)(1). This matter is before the court on two motions in limine by the government. First, the government seeks admission of evidence under Federal Rule of Evidence 404(b). Second, the government asks the court to adopt a proposed jury instruction for the charge of threatening the President or Vice–President under 18 U.S.C. § 871(a).

The court is mindful that the admissibility of the government's 404(b) evidence cannot be conclusively determined at this stage in the proceedings because additional evidence or other circumstances at trial may affect its admissibility. Assuming the facts alleged by the government are proved at trial, however, the court finds at least some of the government's evidence proper under Rule 404(b). Accordingly, the court grants the motion in limine in part, and takes the remaining 404(b) issues under advisement.

Similarly, the court cannot predict what particular jury instruction will be given in this case until the parties have presented their cases at trial. The court is aware, however, that the issues raised in the government's motion requesting jury instructions will affect all phases of the trial from opening statements to closing arguments. Therefore, the court grants the government's motion in limine as to the legal issues raised. The court will wait until the close of both parties' cases before ruling on the exact language of the jury instructions.

## I.

The government alleges that, in October 2001, Adair established a fraudulent email account with America Online ("AOL") under the screen name "SoccrMomAB." The email account was registered under the fictional name "Jennifer Davis." According to the government, Adair then used the fraudulent account to send a message to AOL entitled "Terrorst [sic] Threatener in chat room!" The email claimed that an internet chat room user with the screen name "Enthusiazm" made threats including the statement: "we're going to kill george w. bush and dick cheney." The email stated that AOL should not "assume that this member is joking. This is very serious and I am worried." The email also asked AOL to contact the police.

The government contends that Adair authored the entire message, including the threats. According to the government, Adair fabricated the email because he disliked the AOL subscriber named Enthusiazm and did not want him to participate in the internet chat rooms. The fabricated email was designed to cause AOL to ban Enthusiazm and to prevent him from accessing the internet chat rooms.

In response to the email, AOL notified the United States Secret Service. The Secret Service contacted the United States Attorney for the District of New Jersey and arranged for a subpoena of the AOL subscriber information for Enthusiazm. The Secret Service obtained the subscriber's address and executed a search warrant. They seized five computers from the user's residence and interviewed the user and his family. After extensive investigation, the Secret Service determined that the user of the "Enthusiazm" screen name did not send the threats. After further investigation, the Secret Service discovered that "Jennifer Davis" was a fictional person and the "SoccrMomAB" screen name was fraudulent. The government traced the account to Adair. The government arrested Adair on several charges, including threatening the President and Vice–President in violation of 18 U.S.C. § 871(a).

## II.

The government first seeks to admit, under Fed.R.Evid. 404(b), evidence that

Adair illegally accessed the computer network at Stanford University causing damage in violation of 18 U.S.C. § 1030(a)(5)(A). Specifically, the government seeks to prove that, in 1999, Adair gained unauthorized access to the Stanford University computer network multiple times using the screen name "HEX." In June 1999, a Stanford University security specialist notified the FBI of the unauthorized access. In April 2000, FBI agents executed a search warrant at Adair's home. The agents seized Adair's computers and computer accessories. They also questioned Adair and his mother. Adair admitted to the FBI that he "hacked" the Stanford computer system on several occasions.

As a general rule, evidence of other crimes, wrongs or acts is inadmissible to prove the propensity of a defendant to commit the crime charged. Fed.R.Evid. 404(b); *United States v. Powers,* 59 F.3d 1460, 1464 (4th Cir.1995). It "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R.Evid. 404(b). Rule 404(b) has been interpreted as an inclusive rule, allowing admission of "all evidence of other crimes or acts except that which tends to prove only criminal disposition." *Powers,* 59 F.3d at 1464.

■■■ In *United States v. Queen,* 132 F.3d 991, 995 (4th Cir.1997), the Fourth Circuit articulated a four part test for the admissibility of Rule 404(b) prior acts evidence. Evidence is admissible under Rule 404(b) if: (1) it is relevant to an issue other than character; (2) it is necessary to prove an element of the crime charged; (3) it is reliable; and (4) its probative value is not substantially outweighed by its prejudicial nature. *Id.* The government's evidence that Adair illegally accessed the Stanford University computers, and consequently was the subject of an FBI investigation resulting in the seizure of his computers, satisfies the four part test, and is therefore admissible under Rule 404(b).

First, the evidence shows Adair's motive for sending the fraudulent email and thus is not offered to prove character. Adair allegedly created the fictitious chat room dialogue in an attempt to prevent Enthusiazm from accessing the AOL chat rooms. Part of Adair's plan was to have law enforcement seize Enthusiazm's computers. Evidence of Adair's unauthorized access to Stanford's computer system and his encounters with the FBI prove that Adair was aware law enforcement seize computers to retrieve evidence of an alleged computer crime. The government contends that the desire to have law enforcement seize Enthusiazm's computers motivated Adair, at least in part, to send the fraudulent email.

■■■ Evidence of prior bad acts is relevant where those acts establish motive-that is, the impulse or desire that induces the criminal action. *See United States v. Russell,* 971 F.2d 1098, 1106 (4th Cir.1992) (allowing admission of murder defendant's dishonorable discharge from Marines as proof of defendant's motive in killing his wife where defendant viewed wife as symbol of the Marines); *United States v. Aramony,* 88 F.3d 1369, 1378 (4th Cir.1996) (allowing admission of allegations of sexual harassment as proof of motive for mail fraud where harassment showed the defendant was seeking sexual relations with other employees by traveling with them on business at employer's expense). It follows that evidence of Adair's motive to commit the crime is relevant under 404(b) for a purpose other than proving character.

■ Second, the prior acts evidence is necessary to prove the charged crime. Evidence is necessary where it "is an essential part of the crime" or "furnishes part of the context of the crime." *Queen*, 132 F.3d at 998. Here, Adair's prior acts are necessary to explain why he created the fraudulent account. The evidence establishes why Adair thought the fraudulent email would prevent Enthusiazm from accessing the chat rooms because it shows that Adair knew law enforcement probably would seize Enthusiazm's computers.

Third, the evidence of Adair's unauthorized access to Stanford's computers and the surrounding events meets the *Queen* test for reliability. The government alleges that FBI computer technicians found evidence of Adair's illegal access to Stanford's network on his computer. Furthermore, according to the government, Adair admitted that he "hacked" the Stanford network. Nothing in the record suggests that the government's evidence of these prior acts is unreliable. *See Queen*, 132 F.3d at 998.

■ Finally, the probative value of the prior acts is not substantially outweighed by the prejudicial effect. Evidence should be excluded because of its prejudicial effect "only in those instances where the trial judge believes that there is a genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence." *Powers*, 59 F.3d at 1467. The prior acts in this case present little risk of exciting the jury to irrational behavior. The type of misconduct involved-illegally accessing secure computer networks-is not the sort of conduct that ordinarily inflames the passions of a jury. The information is also highly probative because it explains the desire that induced Adair's allegedly criminal ac-

tion. Therefore, the prior acts satisfy the fourth part of the *Queen* test.

■ Accordingly, given the facts alleged by the government, evidence proving that Adair illegally accessed the Stanford University computer network, and consequently was the subject of an FBI investigation resulting in the seizure of his computers, satisfies the four part *Queen* test and is admissible under Rule 404(b) to show Adair's motive for the crime charged. As noted, however, the admissibility of this 404(b) evidence cannot be determined conclusively until the trial begins because other events or developments at trial may affect the admissibility of the evidence.

The government also seeks admission of the conversations Adair had with a Stanford University security officer while illegally logged into the university network. However, it is not readily apparent that these conversations are necessary to prove Adair's motive in committing the charged crime. Therefore, the court will take under advisement the admissibility of these conversations and determine later whether they meet the four part *Queen* test.

### III.

The government also asks the court to determine the proper instruction for the charge of threatening the President or Vice–President in violation of 18 U.S.C. § 871(a). However, the court cannot predict what particular jury instruction will be appropriate until the parties have presented their cases at trial. Still, the court is mindful that the issues raised in the government's motion will affect all phases of the trial from opening statements to closing arguments. Therefore, the court will address the legal issues raised in the government's motion without deciding on the specific language to be contained in the jury instructions. This opinion does not

violate the prohibition against advisory opinions because the definition of an element of a criminal offense is a crucial issue for the parties in preparing for trial. Accordingly, the court grants the government's motion in limine as to the legal issues raised and outlines the appropriate definition of "willfully" under 18 U.S.C. § 871(a).

Section 871(a) provides, in relevant part:

> Whoever knowingly and willfully deposits for conveyance in the mail or for a delivery from any post office or by any letter carrier any letter, paper, writing, print, missive, or document containing any threat to take the life of, to kidnap, or to inflict bodily harm upon the President of the United States ... [or] the Vice President ... shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 871(a).

The government submitted a proposed jury instruction for the § 871(a) charge that includes the following definition of willfully:

> A threat is "willfully" or deliberately made if in addition to comprehending the words used, the maker voluntarily and intentionally spoke or wrote the words as a declaration of an apparent determination to carry out the threat.
>
> In addition, the statement or writing is "willfully" or deliberately made if made in such a way and under such circumstances that a reasonable person would foresee that the statement or writing would be interpreted by persons hearing it or reading it as a serious expression of an intention to kill, kidnap, or inflict bodily harm upon the President or Vice–President, and that the statement not be the result of mistake, duress, or coercion.

> The government is not required to prove that the defendant actually intended to carry out any threat or even that the defendant was then able to carry out such threat.

The government contends that this instruction is proper under *United States v. Patillo*, 438 F.2d 13 (4th Cir.1971) (rehearing en banc). The defendant contends that the instruction is contrary to *Patillo* and other Fourth Circuit precedent.

To understand the holding of *Patillo*, it is necessary to briefly explain its factual background. Patillo was a security guard at the Norfolk Naval Shipyard. While riding in a patrol car with another guard, Patillo spontaneously stated "I'm going to kill President Nixon, and I'm going to Washington to do it." The other guard said nothing at this point and the conversation ended. The guard later reported Patillo's comments to a supervisor who informed the Secret Service. The following week, the Secret Service arranged to have an agent hide in the trunk of the patrol car. The other guard engaged Patillo in a conversation about President Nixon, and Patillo stated: "I will take care of [President Nixon] personally" and "[I] will gladly give up [my] life doing it." Patillo was arrested and charged under § 871(a).

A panel of the Fourth Circuit reversed Patillo's conviction, holding that, where the threat was not communicated to the President, the defendant must have the present intent to do harm to the President or incite others to do so. *United States v. Patillo*, 431 F.2d 293, 297–298 (4th Cir.1970). The Fourth Circuit then granted a rehearing en banc.

In the en banc decision, the court drew a distinction between *Patillo* and two cases from other circuits, *Roy v. United States*, 416 F.2d 874 (9th Cir.1969), and *United States v. Compton*, 428 F.2d 18 (2d Cir. 1970). Both of those cases involved indi-

viduals who communicated their threats in a manner that would result in "disruption of Presidential activity." *Patillo*, 438 F.2d at 15. In *Roy*, the defendant called a telephone operator and explained that the President would be assassinated if he visited Camp Pendleton. In *Compton*, the defendant called an emergency number and said he intended to assassinate the President with a revolver. In both cases the telephone operator immediately notified law enforcement. The court noted that § 871(a) is "designed to prevent a secondary evil other than actual assaults on the President ... and that it is a legitimate area of congressional concern to prevent ... disruption of Presidential activity." *Id.* The court distinguished *Roy* and *Compton* from *Patillo*, where the remarks were made to a co-worker in a private conversation.

■ The *Patillo* court then analyzed the *Ragansky* test of willfullness. In *Ragansky v. United States*, 253 F. 643, 644–45 (7th Cir.1918), the Seventh Circuit held that a defendant cannot claim as a defense that his threat was a joke if those present would not understand he was joking. The Fourth Circuit rejected *Ragansky*, holding that:

> We think that an essential element of guilt is a present intention either to injure the President, or incite others to injure him, or to restrict his movements, and that *the trier of fact may find the latter intention from the nature of the publication of the threat, i.e., whether the person making the threat might reasonably anticipate that it would be transmitted to law enforcement officers* and others charged with the security of the President.

*Patillo*, 438 F.2d at 16 (emphasis added). Therefore, in determining whether a defendant may be convicted under § 871(a) without an actual intent to harm the Presi-

dent, the critical issue is whether the defendant would anticipate that the threat would reach law enforcement and consequently risk a disruption of the President's movements.

■ Here, the email that Adair allegedly sent to AOL contained a specific request to forward the threats to the police. This, combined with the email's contention that the threats are "very serious" and not to "assume that this member is joking," is enough to establish that the sender of the email would have reasonably expected it to reach law enforcement. Accordingly, assuming the government proves the facts alleged, the jury may be instructed that it can find Adair acted "willfully" if the threats were such that a reasonable person would "anticipate that [the threat] would be transmitted to law enforcement officers and others charged with the security of the President." *Patillo*, 438 F.2d at 16.

### IV.

Assuming the government proves the facts alleged in its motion in limine, the court finds that evidence of Adair's illegal access to the Stanford computer network and the seizure of his computers by the FBI are admissible under Rule 404(b), and grants the motion in limine as to that evidence. The court will take under advisement the admissibility of the conversations between Adair and the Stanford University computer security officer. The court also finds that the government's proposed jury instruction contains the proper definition of "willfully," given the facts alleged, and grants the government's motion in limine as to the legal issues raised by that instruction. An appropriate order will be entered this day.

### ORDER

In accordance with the memorandum opinion entered this day, it is **ORDERED** and **ADJUDGED** that:

(1) the government's motion in limine seeking admission of evidence pursuant to Federal Rule of Evidence 404(b) is **GRANTED** in part and taken under advisement as to the remaining issues;

(2) the government's motion in limine requesting jury instructions is **GRANTED.**