**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 21-4126

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JAMES MICHAEL JOHNSON,

Defendant - Appellant.

No. 21-4484

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JAMES LEONARD SMITH,

Defendant - Appellant.

Appeals from the United States District Court for the Eastern District of Virginia, at Richmond.  Henry E. Hudson, Senior District Judge.  (3:19-cr-00117-HEH-2; 3:19-cr-00117-HEH-3)

Submitted:  August 26, 2022                    Decided:  September 22, 2022

Before NIEMEYER and DIAZ, Circuit Judges, and KEENAN, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**ON BRIEF:** Peter L. Goldman, SABOURA, GOLDMAN & COLOMBO, P.C., Alexandria, Virginia; Elliott M. Harding, HARDING COUNSEL, PLLC, Charlottesville, Virginia, for Appellants.  Kenneth A. Polite, Jr., Assistant Attorney General, Lisa H. Miller, Deputy Assistant Attorney General, Javier A. Sinha, Vasanth Sridharan, Christopher D. Jackson, Acting Assistant Chief, Fraud Section, Criminal Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Jessica D. Aber, United States Attorney, Michael C. Moore, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

2

PER CURIAM:

James Michael Johnson and James Leonard Smith appeal from their convictions for conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). Johnson and Smith additionally appeal their convictions for multiple counts of wire fraud, in violation of 18 U.S.C. § 1343. On appeal, Johnson challenges the sufficiency of the evidence supporting his convictions, and Smith argues that evidence was improperly admitted under Fed. R. Evid. 404(b). We affirm.

Johnson first contends that the evidence did not support his wire fraud and wire fraud conspiracy convictions. We review the sufficiency of the evidence de novo but view the evidence and reasonable inferences that may be drawn from it in the light most favorable to the Government. We will uphold a guilty verdict as long as a rational factfinder could have found the elements of the crime established beyond a reasonable doubt. *United States v. Palin*, 874 F.3d 418, 424 (4th Cir. 2017).

To convict Johnson of conspiracy to commit wire fraud under 18 U.S.C. § 1349, the Government had to establish that (1) two or more people agreed to commit wire fraud, and that (2) Johnson willfully joined the conspiracy intending to further its unlawful purpose. *See United States v. Burfoot*, 899 F.3d 326, 335 (4th Cir. 2018). Wire fraud, the underlying offense, required evidence that Johnson (1) devised or intended to devise a scheme to defraud, and (2) used or caused the use of wire communications to further the scheme. *See id.* at 335. We have explained that, "[t]o establish a scheme to defraud, the government must prove that the defendant[s] acted with the specific intent to defraud." *United States v.*

3

*Wynn*, 684 F.3d 473, 478 (2012) (cleaned up). "Thus, the . . . wire fraud statute[] ha[s] as an element the specific intent to deprive one of something of value through a misrepresentation or other similar dishonest method, which indeed would cause him harm." *Id.* Therefore, "to convict a person of defrauding another, more must be shown than simply an intent to lie to the victim or to make a false statement to him." *Id.* As the Supreme Court has explained, a scheme to defraud "must be one to deceive the [victim] *and* deprive [him or her] of something of value." *Shaw v. United States*, 580 U.S. 63, 72 (2016). However, specific intent may be "inferred from the totality of the circumstances and need not be proven by direct evidence." *United States v. Godwin,* 272 F.3d 659, 666 (4th Cir. 2001).

In challenging his conspiracy conviction, Johnson contends that the Government did not prove the specific intent required. Specifically, Johnson avers that the evidence supported the conclusion that he did not intend to deprive the victims of anything of value and instead wanted them to make money and receive their capital. However, to the contrary, the evidence showed that, in order to induce investments, Johnson made a series of promises to investors that their loans would be "risk free," guaranteed, and would earn high rates of interest. However, none of these promises were fulfilled. Johnson was aware that previous promises and representations were not honored, yet he continued to induce new investments with identical promises. Regardless of whether Johnson hoped that the investors he recruited would be made whole, he was still aware that their investments had been disbursed to the Defendants and others and could only be returned with money from new, equally fraudulent investments. This evidence was sufficient to show Johnson's

4

specific intent. *See id.* at 666-67 (holding that evidence that defendants repeatedly appropriated investors' money, even in the face of promises to past investors not fulfilled, was sufficient to show specific intent to defraud). Accordingly, there was sufficient evidence to support Johnson's wire fraud and conspiracy to commit wire fraud convictions.[1]

Next, Johnson challenges the sufficiency of the evidence supporting his conviction for conspiracy to commit money laundering. To prove Johnson participated in a conspiracy to launder money, the Government must "prove that (1) a conspiracy to commit . . . money laundering was in existence, and (2) that during the conspiracy, the defendant knew that the proceeds . . . had been derived from an illegal activity, and knowingly joined in the conspiracy." *United States v. Alerre*, 430 F.3d 681, 693-94 (4th Cir. 2005). On appeal, Johnson argues only that there was no evidence that he personally handled any money. However, such is not an element of the crime. In any event, contrary to Johnson's contention, the record contains evidence that Johnson personally accepted checks from

---

[1] Johnson very briefly raises two related claims. First, he asserts that the evidence was insufficient to show that he knew about the unlawful activity and that he knowingly joined the conspiracy. However, as discussed above, there was more than sufficient evidence that Johnson was aware that investors were being defrauded and that, even after promises were not fulfilled to current investors, he continued to recruit new investors by providing false information. As such, the Government provided sufficient evidence of Johnson's knowledge of and participation in the scheme. Second, he asserts that the district court did not properly define and use the words "specific intent" in its instructions. However, the district court did use the words "specific intent to defraud." (J.A. 952). Moreover, our review of the record reveals that there was no plain error in the intent instruction.

victims of the scheme and forwarded them to codefendants. As such, this claim is without merit.

Before trial, the Government moved to admit evidence of Smith's other acts under Fed. R. Evid. 404(b). In particular, the Government sought to introduce evidence that, in 2008, Smith was involved in two financial operations. First, Smith worked with a company that, according to Smith during his interview with law enforcement, he later learned was "a 'Ponzi scheme.'" (J.A. 65).[2] Second, Smith had operated a company that traded "'[m]edium [t]erm [n]otes'" and promised investors "'risk-less principal' transactions" and a high rate of return (5% per month, which would eventually increase to 8% per month). (J.A. 63). The Government also sought to introduce evidence that Smith had been interviewed by the FBI in 2013 regarding his involvement in these two financial operations and that an FBI agent at that time warned Smith "that any investment program purporting to provide low- or no-risk returns that are above normal rates (such as 3% per month) is, in all likelihood, a fraudulent investment." (J.A. 65). In response, Smith informed the agent that he was not responsible for the investments and also stated that he believed the investors received all their funds. The district court granted the motion, permitting the evidence to be submitted to the jury and ruling that the evidence was relevant to Smith's knowledge and intent.

We review a district court's determination of the admissibility of evidence under Rule 404(b) for abuse of discretion. *United States v. Queen*, 132 F.3d 991, 995 (4th Cir.

---

[2] This opinion cites to the electronic page number of the joint appendix.

1997).  A district court will not be found to have abused its discretion unless its decision to admit evidence under Rule 404(b) was arbitrary or irrational.  *See United States v. Haney*, 914 F.2d 602, 607 (4th Cir. 1990).  Evidence of prior acts is admissible under Rule 404(b) if the evidence is: (1) relevant to an issue other than the general character of the defendant; (2) necessary, in that it is probative of an element of the offense; and (3) reliable.  Further, the probative value of the evidence must not be substantially outweighed by its prejudicial value.  Fed. R. Evid. 403; *Queen*, 132 F.3d at 995.  Limiting jury instructions explaining the purpose for admitting evidence of prior acts and advance notice of the intent to introduce prior act evidence provide additional protection to defendants.  *Queen*, 132 F.3d at 998.

Smith first argues that his actions in 2008 were not probative of his intent because the evidence failed to show that the 2008 acts were illegal or, if they were, that Smith was aware of this fact at the time.  However, such evidence was not necessary, and the Government recognized that it was possible that "the evidence does not constitute a crime or wrong on Smith's part."  (J.A. 62).  The prior acts evidence at issue showed that Smith had previously worked with or for companies that offered investments that had the hallmarks of fraud and that Smith was specifically warned about these hallmarks.  This evidence was probative in that it made it more likely that Smith knew that the similar charged conduct was a part of a fraudulent scheme, that Smith knew that the investment terms were suspicious, and that Smith had the intent to join an unlawful scheme.  *See United States v. Agramonte-Quezada,* 30 F.4th 1, 15 (1st Cir. 2022) (admitting evidence of prior canine alert, where current and prior alert were "highly factually similar," because

7

prior alert was relevant to show opportunity, intent, common plan, and knowledge, even though prior alert did not result in recovery of drugs or arrest).

Next, Smith asserts that the other acts evidence was not reliable because the agent's testimony regarding the hallmarks of a fraudulent scheme was erroneous. Specifically, he asserts that a riskless principal transaction can be a legitimate transaction. Smith misunderstands the reliability requirement. "Evidence is reliable for purposes of Rule 404(b) unless it is so preposterous that it could not be believed by a rational and properly instructed juror." *United States v. Siegel,* 536 F.3d 306, 319 (4th Cir. 2006) (internal quotation marks omitted). Thus, the question is not whether the agent correctly identified the hallmarks of a fraudulent scheme but rather whether the agent's recounting of his interactions with Smith was "preposterous." Smith does not dispute that the agent's testimony recounting their conversation was believable. Smith was free to cross-examine the agent regarding his knowledge of investments, and in fact, Smith himself testified on this issue.

Finally, Smith asserts that the admission of the agent's testimony was unduly prejudicial because "riskless principal transactions" can be legitimate and, therefore, would not give Smith reason to suspect fraud either in 2008 or in the instant case. Smith contends that the jury might have concluded that he must have known the charged scheme was fraudulent based on the agent's erroneous testimony that Smith was involved in a fraudulent scheme earlier. Again, Smith misunderstands the requirements of evidentiary rules. Evidence which is prejudicial only because it is highly probative is not the type of prejudice that Rule 403 seeks to prevent. *See Queen,* 132 F.3d at 998. Instead, prejudice

8

in this sense refers to evidence that "would invoke emotion in place of reason" or cause confusion. *Id.*

Here, any prejudice was handily outweighed by the probative value of the evidence. Moreover, the district court mitigated the risk of prejudice with its repeated limiting instructions. *See United States v. White*, 405 F.3d 208, 213 (4th Cir. 2005) ("[A]ny risk of such prejudice was mitigated by a limiting instruction from the district court clarifying the issues for which the jury could properly consider [Rule 404(b)] evidence."). Further, the evidence "did not involve conduct any more sensational or disturbing than the crimes with which [the defendant] was charged." *United States v. Byers*, 649 F.3d 197, 210 (4th Cir. 2011) (internal quotation marks omitted). Finally, Smith testified at trial, explaining his understanding of no-risk investments and of the agent's warning in that regard. Thus, Smith presented evidence contradicting the agent's testimony and further mitigated any prejudice. The district court therefore did not abuse its discretion under Rule 404(b).

Accordingly, we affirm Johnson's and Smith's convictions. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED*