**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 03-4850**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ALEXANDER LAPTEFF,

Defendant - Appellant.

---

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond.  Henry E. Hudson, District Judge.  (CR-03-78)

---

Argued: September 19, 2005          Decided: December 28, 2005

---

Before NIEMEYER and LUTTIG, Circuit Judges, and Robert J. CONRAD, Jr., United States District Judge for the Western District of North Carolina, sitting by designation.

---

Affirmed in part, vacated in part, and remanded by unpublished per curiam opinion.

---

**ARGUED:** William Jeffrey Dinkin, DINKIN, PURNELL & JOHNSON, P.L.L.C., Richmond, Virginia, for Appellant.  Brian Lee Whisler, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.  **ON BRIEF:** Paul J. McNulty, United States Attorney, Richmond, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

A federal grand jury returned an eighteen count indictment against the Defendant Alexander Lapteff, alleging certain violations of the Clean Water Act, 33 U.S.C. § 1301 et seq., and related charges. The court dismissed one false statement count at the close of the government's evidence. The jury convicted the defendant of three counts of making false statements in a log book, two counts of making false statements in a discharge monitoring report, one count of failing to maintain monitoring records, and a lesser included offense of negligent failure to properly maintain and operate a sewage treatment facility. The jury acquitted the defendant on one count of failing to submit a report and one count of making a false statement.

Following the jury's verdict, the district court sentenced Lapteff to thirty-six months' imprisonment, one year of supervised release, a fine of $5,000 and a special assessment of $625. Lapteff now challenges his conviction, arguing that the district court improperly admitted "other crimes" evidence against him, as well as, for impeachment, a 1992 federal conviction for filing a false tax return. The defendant also challenges his sentence on grounds that the district court made factual findings at sentencing not found by the jury, which enhanced his sentence in violation of the Supreme Court's decision in <u>Blakely</u> v. <u>Washington</u>, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). We find no reversible

error and affirm Lapteff's conviction.  We vacate his sentence, however, and remand this case for re-sentencing consistent with the Supreme Court's recent decision in United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), and our decision in United States v. Hughes, 401 F.3d 540 (4th Cir. 2005).

# I.

In April 1997, the Christchurch school contracted with Analytech, Inc. ("Analytech"), an environmental consulting firm, to manage the Christchurch wastewater treatment facility. From November 1997, through March 2002, the defendant, Alexander Lapteff, operated the wastewater treatment facility on behalf of Analytech.

As the principal operator of the Christchurch facility, Lapteff was required to comply with the conditions detailed in the National Pollution Discharge Elimination System Permit (the "permit") issued to the facility.  The permit set forth effluent discharge limits, monitoring and recordation requirements, and conditions for general maintenance and operation of the facility.

Between September 2001 and December 2001, Virginia Department of Environmental Quality ("DEQ") inspector Steven Stell conducted a series of announced and unannounced inspections of the Christchurch facility. During these investigations, Stell observed and documented continuing violations of the permit.  Moreover, on

3

December 10, 2001, Analytec submitted its November Discharge Monitoring Report to the DEQ, which failed to reflect the chlorine residuals at the Christchurch facility for the month of November, as required by the permit. After Stell concluded his investigation, he notified DEQ criminal investigator Ralph Mayer.

On January 8, 2002, Mayer commenced an investigation to verify whether an Analytech employee was conducting the requisite daily operations. Mayer's investigation, and a subsequent investigation by the FBI, revealed several discrepancies between the log book entries stating when daily maintenance was performed, and the dates on which investigators observed an Analytech employee actually visit the facility. The investigation also revealed that when Lapteff came to the facility, he remained there for less than 75 minutes, even though the permit required an Analytech employee to operate and maintain the facility for a minimum of four hours per day. The investigators also discovered that a number of log books were missing from the facility. A subsequent search of Analytech's offices revealed six volumes of logbooks missing from the facility.

II.

At trial, and over Lapteff's objection, the district court admitted certain testimony concerning: (1) a 1982 communication between the Virginia State Water Control Board and the defendant; (2) a 1991 revocation of the defendant's Class I wastewater

4

treatment license after a finding of improper chlorine discharge; and (3) a 1996 interview with federal agents in which, when asked about his performance at a separate wastewater treatment facility, the defendant denied that he or any of his workers ever skipped required monitoring activity or testing.  The defendant further complains that after he testified, the district court improperly admitted, for impeachment, evidence of his prior felony conviction for filing a false tax return.  The district court conducted a hearing on the proffered evidence and, as to each, found it admissible.  The court also gave a limiting instruction as to the limited purpose for how the evidence was to be used by the jury.

## A.

Lapteff contends that "other act" evidence should have been excluded under Fed.R.Evid. 404(b), which provides as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident....

We have noted that "Rule 404(b) is viewed as an inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove only criminal disposition." United States v. Gray, 405 F.3d 227, 239 (4th Cir. 2005) (citing United States v. Young, 248 F.3d 260, 270-71 (4th Cir.2001)).  In Gray, we held that evidence of "other crimes" is admissible under Rules 404(b) and 403

if four conditions are satisfied.  First, "[t]he evidence must be relevant to an issue, such as an element of an offense, and must not be offered to establish the general character of the defendant." Gray, 405 F.3d at 239 (citing United States v. Queen, 132 F.3d 991, 997 (4th Cir. 1997). Second, "[t]he act must be necessary in the sense that it is probative of an essential claim or an element of the offense." Id.  Third, "[t]he evidence must be reliable."  Id. Finally, "the evidence's probative value must not be substantially outweighed by confusion or unfair prejudice in the sense that it tends to subordinate reason to emotion in the factfinding process." Id.

With respect to each of the items of evidence introduced, all four conditions were satisfied.  They are reviewed seriatim.

The 1982 Virginia State Water Board Communication

The government introduced the testimony of Eugenia Grandstaff, an enforcement specialist with the Virginia State Water Board. Grandstaff testified that she met the defendant in 1982, and after investigation, sent him a warning letter.  A portion of that letter was introduced into evidence.  When asked about the "second part of the middle paragraph" of that letter, Grandstaff read, "Although you noted ... that the sample was taken on June 3rd, you did not indicate the reason for this.  Not reporting data for or misrepresenting data is a falsification of records.  This is a criminal offense."

6

The government offered the evidence as probative of the defendant's knowledge. Although the crimes charged were general intent crimes, the government bore the burden of establishing that a false statement was made knowingly, and not because of accident or mistake. Evidence of prior notice of the potential criminality of false statements was probative of this issue and was clearly relevant and necessary to sustain an element of the government's case. Its reliability was demonstrated by the fact that Grandstaff was the same person who interviewed the defendant and personally wrote the letter addressed to him.

The 1991 Illegal Chlorine Discharge

The government called Francis Walter Pedrotty III, an attorney with the Virginia Attorney General's office. Pedrotty testified that he prosecuted an administrative action against Lapteff after a chlorine discharge caused the death of numerous fish in 1991. The defendant lost his Class I wastewater operating license as a result of his failure to supervise employees. The government offered into evidence the Order that revoked Lapteff's license.[1]

As with the 1982 letter, the government proffered a valid 404(b) purpose for this evidence - to show the defendant's knowledge

---

[1]Lapteff did not object to the admission of this document on hearsay grounds even though the court had previously sustained a hearsay objection to the introduction of a Notice of Informal Fact-Finding Conference concerning the same incident. At oral argument counsel indicated that for strategic reasons he did not assert a hearsay objection. Regardless, that issue is not before us.

and intent.  This evidence was probative of the defendant's state of mind at the time he committed the charged offense, an element of the government's burden of proof.  The other act evidence, a license revocation for failure to supervise, was similar to the instant charge and not too remote in time.

Defendant argues that evidence of a "fish kill" was emotive and unfairly inflamed the passions of the jury.  It is hard to fathom how a one sentence description of the prior issue in the context of a nearly five hundred page trial transcript could have the contended effect. Any danger that the jury would be swayed by this evidence to "subordinate reason to emotion in the factfinding process" was effectively cured by the court's limiting instruction, informing the jury it could only consider the evidence once it had first found beyond a reasonable doubt from other evidence that the defendant committed the acts charged in the indictment, and only then for the limited purpose of determining the defendant's state of mind or intent.  We presume trial juries capable of following such clear instructions.  See Queen, 132 F.3d at 997.

The 1996 interview

The final 404(b) issue is a non-custodial interview of the defendant by federal investigators about his company's prior testing practices.  At trial, government counsel restricted his examination to "one aspect of that interview."  EPA Agent Michael Shumaker testified that Lapteff denied that he or his employees failed to

monitor or conduct proper tests. Lapteff's denial is not 404(b) evidence. Indeed, at oral argument, counsel strained, and failed, to articulate how this evidence constituted "other act" evidence at all. The fact that six years earlier, Lapteff denied allegations of misconduct which denial tended to show his knowledge of the regulatory scheme and the necessity of compliance with monitoring and testing requirements of the law simply is not an "other act" contemplated by Rule 404(b).

B.

Defendant's remaining claim relates to the admission of Lapteff's 1992 conviction for filing a false tax return. Defendant contends that Fed.R.Evid. 609 prohibits impeachment by a conviction more than ten years old, unless its probative value substantially outweighs its prejudicial effect. Arguing that the district court's balancing test was deficient, Lapteff contends the admission constituted an abuse of discretion. We disagree.

First, defendant's prior felony conviction for filing a false tax return, a violation of 26 U.S.C. § 7206(1), is for a crime involving dishonesty or false statement. See, e.g. United States v. Thompson, 806 F.2d 1332 (7th Cir. 1986)(affirmed trial court's admission of prior conviction for filing false tax returns as a crime involving dishonesty or false statement resulting in imprisonment within ten-year period). As such, admission is

9

mandatory under Rule 609(a)(2). <u>See</u> Fed.R.Evid. 609 advisory committee note to subdivision (a) of 1974 enactment ("Such convictions are peculiarly probative of credibility and, under this rule, are always to be admitted"). Thus, if Lapteff's tax fraud conviction was less than ten years old within the meaning of Fed.R.Evid. 609(b), admission was required.

In this case, the defendant was convicted of filing false tax returns on January 24, 1992, and sentenced, inter alia, to four months' incarceration followed by three years of supervised release, with conditions of release which included paying taxes due and owing in the amount of $218,192 within six months. The defendant violated this condition, and, on September 21, 1994, his supervised release was revoked. He was sentenced to an additional four months' imprisonment. His release from prison sometime after September 21, 2004, came within ten years of his trial on July 21-24, 2003.

Whether confinement pursuant to a revocation of <u>supervised release</u> is confinement imposed for the original conviction within the meaning of Rule 609(b) is a question not yet addressed in this circuit. In <u>United States</u> v. <u>Gray</u>, 852 F.2d 136 (4th Cir. 1988), we held that a seventeen year old bank robbery conviction was admissible for impeachment where, as a result of a <u>parole</u> violation, defendant's confinement came within Rule 609(b)'s ten-year period. Similarly in <u>United States</u> v. <u>McClintock</u>, 748 F.2d 1278 (9th Cir. 1984), the Ninth Circuit held that a <u>probation</u> violation that caused

incarceration within ten years was confinement for the original conviction within the meaning of Rule 609(b). Id. at 1288-89 (citing United States v. Brewer, 451 F.Supp 50, 53 (E.D. Tenn.1978)("reconfinement" pursuant to a parole revocation is confinement for the original conviction)).

We find no reason not to treat confinement following revocation of supervised release similar to that for parole and probation violations. Each relates back to the underlying conviction. Defendant's attempts to distinguish Gray are unpersuasive. First, he argues that Gray was still in prison at the time of his second trial. That argument simply establishes the point that, for Rule 609(b) purposes, less than ten years had elapsed since the date of confinement. Second, he argues that an additional act of criminality is required to "reset" the ten year period. This argument misses the point. Lapteff's conviction for filing a false tax return included a period of supervised release. His violation of a condition of that supervised release and concomitant incarceration constitutes confinement for the original conviction within the meaning of Rule 609(b).

In short, Lapteff's conviction met all the criteria for mandatory admission under Fed.R.Evid. 609. Because we find that the challenged conviction involving dishonesty or false statement came within the ten year period provided by Rule 609(b), we need not reach the issue of the district court's alternative holding that the

11

probative value of the use of the conviction for impeachment substantially outweighed its prejudicial effect.

### C.

Finally, the government concedes that Lapteff's sentence was erroneous under United States v. Booker, supra, 543 U.S. 220, because it was imposed under a mandatory Sentencing Guidelines regime. We find that plain error occurred in sentencing Lapteff according to the Guidelines as mandatory.[2] See United States v. Hughes, 401 F.3d 540(4th Cir. 2005).

### III.

Accordingly, while we affirm Lapteff's conviction, we vacate his sentence and remand for re-sentencing in accordance with Booker.

AFFIRMED IN PART,
VACATED IN PART,
AND REMANDED

---

[2]Just as we noted in Hughes, 401 F.3d at 545 n.4, "we of course offer no criticism of the district judge, who followed the law and procedure in effect at the time" of Lapteff's sentencing.