**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 13-4335**

———————

UNITED STATES OF AMERICA,

                Plaintiff - Appellee,

     v.

RANDAL MCLEAN,

                Defendant - Appellant.

———————

Appeal from the United States District Court for the District of Maryland, at Baltimore.  George L. Russell, III, District Judge. (1:10-cr-00373-GLR-1)

———————

Argued:  May 15, 2014          Decided:  August 12, 2014

———————

Before KING, WYNN, and FLOYD, Circuit Judges.

———————

Affirmed by unpublished per curiam opinion.

———————

**ARGUED:** William A. Mitchell, Jr., BRENNAN MCKENNA MANZI SHAY LEVAN CHARTERED, Greenbelt, Maryland, for Appellant.  John Francis Purcell, Jr., OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.  **ON BRIEF:** Rod J. Rosenstein, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

A jury sitting in the United States District Court for the District of Maryland at Baltimore found Randal McLean guilty of one count of possession with intent to distribute cocaine, 21 U.S.C. § 841(a), and not guilty of possession of ammunition by a convicted felon, 18 U.S.C. § 922(g)(1). The district court sentenced him to 120 months' imprisonment, followed by three years of supervised release. McLean then filed this timely appeal. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

McLean presents two questions in this appeal. The first is whether the district court committed reversible error in denying his motion to suppress evidence that officers seized from him while making a warrantless arrest. The second is whether the district court committed reversible error in granting the government's motion to admit evidence of two of McLean's prior drug convictions. Not identifying any reversible error, we affirm the judgment of the district court.

I.

A.

As the district court detailed in its oral ruling denying McLean's motion to suppress, Detective Stephen Mays, who had been working with the Baltimore Police Department for

2

approximately eight years and is experienced in the field of narcotics, received information on March 2, 2010, from a confidential source that illegal narcotics were being stored in a vacant house on the even-numbered side of the 2200 block of Guilford Avenue and that someone was taking those narcotics in and out of the house. The confidential source was an individual who had been arrested for his alleged involvement in narcotics. The district court determined that the source had not established his reliability and that Mays did not promise him anything in exchange for the information that he provided. The district court stated, however, that it assumed that the source was hoping to benefit by providing the information.

The next morning, at around 7:30 AM, which was consistent with the time that the confidential source suggested that there might be drug activity at the vacant house, Mays and his partners went to the area and hid themselves on the third floor of another vacant building nearby where they had—except for the distance—"a relatively unimpeded view" of the rear door of 2204 Guilford Avenue. Mays had binoculars with him, which gave a better—but not perfect—view of what was occurring. Although not in the judge's oral order, the record reveals that Officer Craig Streett also participated in surveilling McLean on March 3, 2010.

3

At approximately 8:00 AM, the officers observed someone later identified as McLean. He was wearing a gray sweatshirt, blue jeans, and possibly a hat. McLean came from the right side of the alley beside the house and entered the rear yard. He appeared to use a key or in some other way unlock what appeared to be a padlock—or some other mechanism—that was securing the rear door of 2204 Guilford Avenue. He then entered the house and exited after about thirty seconds. The district court found this to be consistent with entering the house to retrieve something. The officers next observed him secure the door and then exit the yard while talking on his cell phone.

At about 9:00 AM, both Mays and Detective Adam Lattanzi saw McLean enter the rear alley behind 2204 Guilford Avenue with another individual. While the other individual remained in the alley, McLean again used a key or in some other manner unlocked the rear door, entered the house, remained just long enough to retrieve something, exited, and locked the door. McLean then approached the other individual in the alley and removed from his shirt what Mays thought to be narcotics packaging and handed it to the other individual.

McLean and the other individual moved along the left side of the alley, and McLean motioned with his hand for someone to come to him. Two other individuals came in from Guilford

4

Avenue, passed McLean, and approached the other individual who was with McLean.  After that, as stated by the district court,

> Both Detective Mays, and to some extent Officer Lattanzi, but particularly Detective Mays with the binoculars, were able to observe approximately simultaneous transactions, exchanges of what appeared to be currency, bill form, from the two new individuals, and in turn, they were given small objects retrieved from the package that Mr. McLean had given the other individual.
>
> Mr. McLean walked out towards Guilford.  All three followed at some point shortly thereafter.

Based on these observations, the district court determined that the officers had probable cause to arrest McLean in that, considering the officers' observations and experience, and based on the totality of the circumstances, they reasonably believed that McLean was involved in illegal narcotics transactions.

The officers located and arrested McLean without an arrest warrant around 23rd Street and Barclay Street.  While arresting McLean, they found a key on him that fit the padlock on the back door of 2204 Guilford Avenue.

When the officers entered the house to secure it, they observed drugs in plain view.  They then obtained two search warrants.  Although not in the district court's oral order, from the record we know that the two warrants were for the vacant house at 2204 Guilford Avenue and McLean's home, located at 313 E. 23rd Street.  We also glean from the record that McLean's home was about a one-half block from where McLean was arrested

5

and just one block north of 2204 Guilford Avenue. Moreover, the record reveals that during the police officers' search of 2204 Guilford Avenue, they recovered drugs, ammunition, and drug packaging materials. Officers also recovered drug packaging materials from 313 E. 23rd Street.

## B.

Before trial, the government filed a motion to admit evidence under Federal Rule of Evidence 404(b) that McLean had previously been convicted of three drug-law violations in the same area as the one charged here. On April 22, 1999, he was convicted of distribution and possession with intent to distribute cocaine, arising from a July 1, 1998, arrest. Then, on September 15, 2004, he was convicted of distribution of heroin stemming from a January 19, 2004, arrest. And, on September 15, 2005, McLean was convicted of distribution of cocaine resulting from a February 13, 2004, arrest. The government ultimately entered evidence of only the January 19, 2004, and February 13, 2004, arrests and subsequent convictions.

McLean raises two contentions to the evidence used against him, which we address in turn below.

First, McLean contends that the district court erred in denying his motion to suppress evidence that the officers seized from him while making a warrantless arrest. When we consider the denial of a suppression motion, we review the district court's factual findings for clear error and its legal determinations de novo. United States v. Kelly, 592 F.3d 586, 589 (4th Cir. 2010). Because we view the facts in the light most favorable to the prevailing party, here we view the facts in the light most favorable to the government. See United States v. Black, 707 F.3d 531, 534 (4th Cir. 2013). "We particularly defer to a district court's credibility determinations, for 'it is the role of the district court to observe witnesses and weigh their credibility during a pre-trial motion to suppress.'" United States v. Abu Ali, 528 F.3d 210, 232 (4th Cir. 2008) (quoting United States v. Murray, 65 F.3d 1161, 1169 (4th Cir. 1995)).

"Under the Fourth Amendment, if supported by probable cause, an officer may make a warrantless arrest of an individual in a public place." United States v. Humphries, 372 F.3d 653, 657 (4th Cir. 2004). "Probable cause" sufficient to justify an arrest requires "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances

7

shown, that the suspect has committed, is committing, or is about to commit an offense." Michigan v. DeFillippo, 443 U.S. 31, 37 (1979). Our review focuses on what evidence was presented, not what evidence was not presented. United States v. McCoy, 513 F.3d 405, 412 (4th Cir. 2008). When considering the totality of the circumstances, it is proper to consider an officer's practical experience and the inferences the officer may draw from that experience. Ornelas v. United States, 517 U.S. 690, 700 (1996). "[T]he probable-cause standard does not require that the officer's belief be more likely true than false." Humphries, 372 F.3d at 660.

"Probable cause is a flexible standard that simply requires 'a reasonable ground for belief of guilt' and 'more than bare suspicion.'" United States v. Ortiz, 669 F.3d 439, 444 (4th Cir. 2012) (quoting Brinegar v. United States, 338 U.S. 160, 175 (1949)). "[T]he probable-cause standard is a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Maryland v. Pringle, 540 U.S. 366, 370 (2003) (quoting Illinois v. Gates, 462 U.S. 213, 231 (1983)) (internal quotation marks omitted). "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or

8

even usefully, reduced to a neat set of legal rules." Gates, 462 U.S. at 232.

Here, McLean maintains that, although the officers may have had reasonable suspicion to stop him, they did not have probable cause to arrest him. The Supreme Court has "described reasonable suspicion simply as 'a particularized and objective basis' for suspecting the person stopped of criminal activity." Ornelas, 517 U.S. at 696 (quoting United States v. Cortez, 449 U.S. 411, 417–18 (1981)). Here, the officers did not merely suspect McLean of criminal activity. Instead, based on their experience and observations, as well as the inferences that they could draw, they reasonably believed that he had committed a crime.

As the district court held, and as detailed above, a confidential source informed the officers that illegal drug activity was taking place in the 2200 block of Guilford Avenue. The next morning, they set up surveillance in the area and were able to watch McLean with "a relatively unimpeded view," as the district court termed it, while he twice unlocked and entered the rear door of 2204 Guilford Avenue just long enough to retrieve something. The second time he did so, he retrieved something that appeared to be drug packaging. He then handed the package off to another person. After that, McLean signaled two others to come to him. The person with the package and the

9

two individuals whom McLean had just motioned over to him had hand-to-hand exchanges wherein the person with the package handed the two individuals something from the package and they handed to him bill currency. Based on the officers' experience, observations, and reasonable inferences that they could draw, we think it was entirely reasonable for the officers to think that McLean had committed a felonious drug crime. As such, the district court was correct in concluding that McLean's warrantless arrest did not violate the Fourth Amendment. Consequently, the district court was also correct in holding that the evidence that the officers seized from McLean while making the warrantless arrest should not be suppressed.

McLean's attempt to compare and contrast this case with other reasonable-suspicion and probable-cause cases is of no aid to his appeal. "[T]he Supreme Court has observed that because the reasonable-suspicion determination is such a multi-faceted, fact-intensive inquiry, 'one determination will seldom be a useful precedent for another.'" McCoy, 513 F.3d at 412 n.4 (quoting Ornelas, 517 U.S. at 698). It follows that the same is true in probable-cause cases. Having studied the cases that McLean has asked us to consider, we conclude that they fail to provide any useful precedent to support his argument. Thus, we will not attempt here to distinguish them.

Next, McLean maintains that the district court committed reversible error when it granted the government's motion to admit Rule 404(b) evidence of two of McLean's prior felony drug-distribution convictions. This is so, according to McLean, because the prior bad acts occurred six years before the charged conduct here, they were irrelevant and unnecessary to prove the crime charged, they confused the jury, and they unfairly prejudiced him. We review a district court's determination of the admissibility of evidence under Rule 404(b) for abuse of discretion. United States v. McBride, 676 F.3d 385, 395 (4th Cir. 2012).

"Rule 404(b) prohibits evidence of other crimes or bad acts committed by the defendant if offered 'solely to prove a defendant's bad character, but such evidence may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'" United States v. Moore, 709 F.3d 287, 295 (4th Cir. 2013) (quoting United States v. Byers, 649 F.3d 197, 206 (4th Cir. 2011)) (internal quotation marks omitted). "Rule 404(b) is a rule of inclusion, admitting all evidence of other crimes or acts except that which tends to prove only

11

criminal disposition." Id. (quoting Byers, 649 F.3d at 206)

(internal quotation marks omitted).

We have outlined a four-factor test that must be satisfied before a court can properly admit prior bad acts evidence under Rule 404(b):

> (1) The evidence must be relevant to an issue, such as an element of an offense, and must not be offered to establish the general character of the defendant. In this regard, the more similar the prior act is (in terms of physical similarity or mental state) to the act being proved, the more relevant it becomes. (2) The act must be necessary in the sense that it is probative of an essential claim or an element of the offense. (3) The evidence must be reliable. And (4) the evidence's probative value must not be substantially outweighed by confusion or unfair prejudice in the sense that it tends to subordinate reason to emotion in the factfinding process.

United States v. Queen, 132 F.3d 991, 997 (4th Cir. 1997). The fourth factor underscores the requirement that all admitted Rule 404(b) evidence must satisfy Rule 403. United States v. Williams, 740 F.3d 308, 314 (4th Cir. 2014).

B.

As is relevant here, police arrested McLean on January 19, 2004, for selling four gel caps of heroin to undercover police officer Christopher Talley in the area of Barclay Street and 20th Street, two blocks from the 2200 block of Guilford Avenue. They also obtained a total of sixty-six additional gel caps of heroin and seventeen vials of cocaine stashed nearby. As a

12

result, on September 15, 2004, McLean was convicted of distribution of heroin. Police also arrested McLean on February 13, 2004, for selling two black top vials of cocaine in the area of the 2100 block of Barclay Street, which is approximately two blocks from the 2200 block of Guilford Avenue. They found six additional black top vials of cocaine and $427 in McLean's right shirt pocket. Consequently, on September 15, 2005, McLean was convicted of distribution of cocaine.

C.

McLean contests that the Rule 404(b) evidence failed to meet the first, second, and fourth requirements for admission of the Rule 404(b) evidence as set forth in Queen. He does not dispute that it meets the third factor.

1.

McLean argues that the Rule 404(b) evidence admitted in his case was not relevant. As to this factor, he asserts that both of the incidents occurred more than six years before the instant conduct. He also states that the January 19, 2004, arrest concerned a direct sale of heroin—not cocaine, as is the case here—to an undercover police officer, and that the February 13, 2004, arrest involved a direct sale of cocaine to an undercover officer.

13

"For evidence to be relevant, it must be 'sufficiently related to the charged offense.'" McBride, 676 F.3d at 397 (quoting United States v. Rawle, 845 F.2d 1244, 1247 n.3 (4th Cir. 1988)). "The more closely that the prior act is related to the charged conduct in time, pattern, or state of mind, the greater the potential relevance of the prior act." Id. We have also held that geographic proximity is a proper consideration in determining the relevance of Rule 404(b) evidence. See Byers, 649 F.3d at 208.

Of course, the "fact that a defendant may have been involved in drug activity in the past does not in and of itself provide a sufficient nexus to the charged conduct where the prior activity is not related in time, manner, place, or pattern of conduct." McBride, 676 F.3d at 397 (quoting United States v. Johnson, 617 F.3d 286, 297 (4th Cir. 2010)) (internal quotation marks omitted). "[E]vidence, to be relevant, 'need only to have any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" Byers, 649 F.3d at 208 (quoting United States v. Aramony, 88 F.3d 1369, 1377 (4th Cir. 1996)). According to the district court, "There are sufficient similarities between [the two prior drug offenses] as well as the present instance to establish that the evidence is relevant." We agree.

14

First, the January 19, 2004, arrest involved a stash location, as did the instant offense. Thus, this fact goes to the manner of McLean's criminal conduct. Second, the January 19, 2004, drug charge was for the sale of four gel caps of heroin, and the February 13, 2004, drug charge involved black top vials of cocaine. Although the drugs in the January 19, 2004, arrest were different than those for the instant arrest, "the relevance of the evidence 'derives from the defendant's having possessed the same state of mind in the commission of both the extrinsic act and the charged offense.'" United States v. Mark, 943 F.2d 444, 448 (4th Cir. 1991) (quoting United States v. Dothard, 666 F.2d 498, 502 (11th Cir. 1982)). The Rule 404(b) evidence is relevant here on the same basis: the state-of-mind requirement, which includes both the knowledge and intent components, is the same for both of the prior drug convictions and the drug charge here. Stated differently, evidence that McLean previously had the state of mind—the knowledge and intent—to distribute illegal drugs is probative and thus relevant to whether he had the knowledge and intent to commit the crime charged here. And third, both of the prior drug transactions occurred within approximately two blocks of 2204 Guilford Avenue such that they were in close geographic proximity to the crime charged here.

It is true that the two prior drug acts were not closely related in time to the crime charged here. But that is just one consideration. Nevertheless, although the prior drug crimes were not closely related in time, in this instance, evidence of the prior drug convictions six years earlier did help demonstrate a fourth reason that we find the Rule 404(b) evidence relevant: a pattern of drug trafficking activity in the same general area over an extended period of time. Thus, because the prior acts are closely related to the charged conduct in regards to manner, state of mind, place, and pattern, we conclude that the Rule 404(b) evidence is relevant.

2.

McLean also maintains that the Rule 404(b) evidence admitted against him at trial was unnecessary. "We have held that evidence is 'necessary,' for purposes of establishing an exception under Rule 404(b), when that evidence 'is an essential part of the crimes on trial' or when that evidence 'furnishes part of the context of the crime.'" McBride, 676 F.3d at 398 (quoting Rawle, 845 F.2d at 1247 n.4). "Although a defendant's plea of not guilty places at issue all elements of the charged crimes, 'this does not throw open the door to any sort of other crimes evidence.'" Id. (citation omitted) (quoting United States v. Bailey, 990 F.2d 119, 123 (4th Cir. 1993)). Here,

McLean placed the elements of knowledge and intent in play with his plea of not guilty. See Mark, 943 F.2d at 448.

"Significantly," however, "courts must determine whether prior bad acts evidence is 'necessary' under Rule 404(b) in 'light of other evidence available to the government.'" Byers, 649 F.3d at 209 (quoting Queen, 132 F.3d at 998). It follows, then, that the necessity for the Rule 404(b) evidence to establish an issue decreases as non-Rule 404(b) evidence to establish that issue increases. Id. "[I]f the Rule 404(b) evidence is entirely cumulative to other non-Rule 404(b) evidence available to the government, the Rule 404(b) evidence may not meet the necessity prong." United States v. Lighty, 616 F.3d 321, 354 (4th Cir. 2010).

The core of McLean's defense strategy was that the officers had arrested the wrong person. As such, the district court held that the Rule 404(b) evidence was necessary to establish McLean's identity. The district court held that the evidence was also necessary to demonstrate McLean's knowledge and intent to commit the charged crime.

In his mistaken-identity claim, McLean made much of the fact that the confidential source who first told the officers about the drugs that were stored and transported from a vacant house in the 2200 block of Guilford Avenue failed to give a

17

description of the person or persons who allegedly were dealing the drugs:

> Defense
> Counsel:    So there was no description of the particular physical description of the person or persons? There was no description of complexion or build or height or weight?
>
> Mays:    No.

McLean also challenged Mays's recollection of what type of sweatshirt the person entering the house was wearing, whether Mays saw the person unlock the back door of the house with a key, whether the person was using a cellphone, and whether the object that the person passed to the other individual was actually drugs.

So first, evidence of the prior bad acts was necessary to establish that the officers had not arrested the wrong person. By asserting his mistaken-identity claim, McLean made it necessary for the government to introduce evidence of his prior drug convictions, which, as described above, were closely related to the charged conduct in regards to manner, state of mind, place, and pattern. Because of these similarities, the government employed this evidence to help demonstrate that it was McLean, and not someone else, whom Mays and his partners observed engaging in illegal drug transactions on the morning of March 3, 2010. And second, the Rule 404(b) evidence was

18

necessary to help establish McLean's knowledge and intent. Having called into question his identity as the person who was dealing drugs from 2204 Guilford Avenue, McLean effectively challenged the government's assertion that he had the requisite knowledge and intent to commit the crime. Thus, he cannot now be heard to argue that the government's evidence of his prior two drug convictions, which go to knowledge and intent, were unnecessary.

Although the government presented other evidence to support McLean's conviction, its other evidence was not such that it made the Rule 404(b) evidence unnecessary.

3.

Finally, McLean contends that the admission of the Rule 404(b) evidence that he had twice been convicted of drug distribution charges was unfairly prejudicial to him, thereby contravening Rule 403. And, as such, according to McLean, the district court abused its discretion by admitting it.

We have long held, however, that we will not disturb the district court's decision whether to admit evidence under Rule 403 "except under 'the most extraordinary of circumstances,' where that discretion has been plainly abused." United States v. Simpson, 910 F.2d 154, 157 (4th Cir. 1990) (quoting United States v. Heyward, 729 F.2d 297, 301 n.2 (4th

19

Cir. 1984) (internal quotation marks omitted)). "Such an abuse occurs only when it can be said that the trial court acted 'arbitrarily' or 'irrationally in admitting evidence." Id. (quoting Garraghty v. Johnson, 830 F.2d 1295, 1298 (4th Cir. 1987); United States v. Masters, 622 F.2d 83, 88 (4th Cir. 1980)).

"[W]e are reluctant to question a trial court's judgment under Rule 403, and for good reason. Trial judges are much closer to the pulse of a trial than we can ever be and broad discretion is necessarily accorded them." Id. (first alteration omitted) (brackets omitted) (internal quotation marks omitted). "Nonetheless, when, after review of the record, we are left with a firm conviction that an abuse of discretion has occurred that has worked to the prejudice of a defendant, we must reverse." Id. "Of course, in one sense all incriminating evidence is inherently prejudicial. 'The proper question under Rule 404(b), however, is whether such evidence has the potential to cause undue prejudice, and if so, whether the danger of such undue prejudice substantially outweighs its probative value.'" United States v. Boyd, 53 F.3d 631, 637 (4th Cir. 1995) (quoting Mark, 943 F.2d at 449).

"A criminal defendant . . . cannot deny knowledge of drug trafficking or an intent to traffic in drugs and at the same time preclude the admission of the government's evidence of

prior occasions when he willingly trafficked in drugs." Sparks

v. Gilley Trucking Co., 992 F.2d 50, 52 (4th Cir. 1993).

"[W]hen intent to commit an act is an element of a crime, prior

activity showing a willingness to commit that act may be

probative." Id.

As observed above, police arrested McLean on January 19,

2004, for selling four gel caps of heroin to an undercover

police officer. They also recovered sixty-six additional gel

caps of heroin and seventeen vials of cocaine nearby. Police

also arrested McLean on February 13, 2004, for selling two black

top vials of cocaine and found six additional black top vials of

cocaine in McLean's shirt pocket. But evidence presented at

trial showed that the amount of drugs involved in this case was

substantially more than the amounts for which he had been

previously charged. Here, he was also charged here with

possession of ammunition. Consequently, the scales tip in favor

of admitting the Rule 404(b) evidence inasmuch as the evidence

of McLean's previous sales of lesser amounts of drugs were not

any more "sensational or disturbing," Boyd, 53 F.3d at 637, than

what he was charged with here.


                              D.

To ameliorate any prejudice that might be visited upon a

defendant with the admission of Rule 404(b) prior bad act

21

evidence, two additional safeguards are available when requested: (1) a limiting jury instruction that explains the reason for admitting prior bad acts evidence and (2) a requirement that the government, in a criminal case, must provide advance notice that it intends to introduce Rule 404(b) evidence. Queen, 132 F.3d at 997. "When Rule 404(b) is administered according to these rules, it will not, we believe, be applied to convict a defendant on the basis of bad character, or to convict him for prior acts, or to try him by ambush." Id. Instead, it permits "the admission of evidence about similar prior acts that are probative of elements of the offense in trial." Id.

Both safeguards are present here. First, just after the detectives testified regarding McLean's two prior drug convictions, the district court gave the following limiting instruction to the jury:

> Ladies and gentlemen, you've just heard evidence that the government has offered, testimony of three witnesses. Specifically, Detective Collins, Sergeant Talley, as well as Sergeant Rutkowski, I believe I'm pronouncing it improperly. [The evidence is] [i]ntended to show on a different occasion the defendant engaged in conduct similar to the charges in the indictment.

> In that connection, let me remind you that the defendant is not on trial for committing those prior acts not alleged in the indictment. Accordingly, you may not consider this evidence of the similar acts as a substitute for proof that the defendant committed the crime charged.

22

> Nor may you consider the evidence as proof that the defendant has bad character. The evidence of the other similar acts was admitted for a much more limited purpose, and you may consider it only for that limited purpose.
>
> If you find that the defendant did engage in that other conduct, and if you find that other conduct has sufficiently similar characteristics to that charged in the indictment, then you may but you need not infer that the defendant was the person who committed the act charged in the relevant counts of the indictment. That is, you may consider the prior act evidence as evidence of identity.

Although not contained in the Joint Appendix, the government asserts that the district court gave a similar admonition during its closing instructions to the jury. McLean does not contest otherwise.

And second, McLean was made aware in advance that the government intended to introduce Rule 404(b) in its case against him with its January 11, 2012, filing of its motion to admit Rule 404(b) evidence. Thus, we conclude that evidence of McLean's two prior drug convictions was not used to convict McLean "on the basis of bad character, or to convict him for prior acts, or to try him by ambush." Queen, 132 F.3d at 997. As such, the district court did not err in granting the government's motion to admit evidence of two of McLean's prior drug convictions.

23

E.

McLean's reliance on other cases from this Court to support his argument that the district court erred in admitting the Rule 404(b) evidence is unavailing. This Court has held that admission of Rule 404(b) evidence "should be considered with meticulous regard to the facts of each case." United States v. Hernandez, 975 F.2d 1035, 1040 (4th Cir. 1992) (quoting United States v. Baldivid, 465 F.2d 1277, 1290 (4th Cir. 1972) (Soboloff, J., concurring in part and dissenting in part)). Simply stated, none of the cases cited by McLean present the same factual scenario as what we are confronted with here. On the facts of this case, the district court did not err in admitting the Rule 404(b) evidence.

IV.

For these reasons, we find no reversible error and thus affirm the judgment of the district court.

AFFIRMED

24