**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-4544**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

VALENTINA ELEBESUNU,

Defendant – Appellant.

Appeal from the United States District Court for the District of
Maryland, at Greenbelt.    George  J.  Hazel,  District  Judge.
(8:13-cr-00008-GJH-2)

Submitted:  November 21, 2016          Decided:  February 7, 2017

Before SHEDD, AGEE, and DIAZ, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Joseph  Murtha,  MURTHA  PSORAS  &  LANASA  LLC,  Lutherville,
Maryland, for Appellant.   Rod J. Rosenstein, United States
Attorney, Baltimore, Maryland, Menaka Kalaskar, Assistant United
States  Attorney,  OFFICE  OF  THE  UNITED  STATES  ATTORNEY,
Greenbelt, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

After a five-day jury trial, Valentina Elebesunu ("Elebesunu") was convicted of Hobbs Act robbery and conspiracy to commit Hobbs Act robbery, both violations of 18 U.S.C. § 1951(a). On appeal she challenges the admission of a portion of a co-conspirator's testimony as improper character evidence prohibited by Federal Rule of Evidence 404(b). As Elebesunu failed to object to the challenged evidence, its admission is reviewed only for plain error. We conclude the admission of the testimony was not plain error and affirm Elebesunu's conviction.

I.

A.

On November 21, 2012, three masked gunmen robbed an armored truck outside a Bank of America branch in Bladensburg, Maryland (the "bank"). All told, they took about $275,000. But the gunmen did not act alone. As the authorities investigated the robbery, a larger conspiracy became apparent, one that eventually included two bank insiders.

The first insider was Damione Lewis ("Lewis"), a contract security guard hired to protect the bank. Lewis was arrested on December 6, 2012. After his arrest, Lewis confessed to organizing the robbery and told investigators he had enlisted several associates to carry out the crime.

2

Lewis also named a second insider, Elebesunu, who, at the time, was a Bank of America assistant vice president. Lewis described Elebesunu as a principal in planning and facilitating the robbery. Later, Elebesunu was arrested and charged with Hobbs Act robbery and conspiracy to commit that crime. She pleaded not guilty and went to trial on both counts.[1]

B.

Lewis testified against Elebesunu at trial as required by his written plea agreement. According to Lewis, he and Elebesunu were close outside work; she had been invited to his wedding, and he had picked her children up from after school activities on numerous occasions. One afternoon shortly before the robbery the two began discussing their finances in the bank's break room. In particular, the two talked over some significant upcoming expenses: Elebesunu was having trouble paying her daughter's private school tuition and Lewis had a newborn on the way.

Their conversation took a turn into uncharted territory when Elebesunu "said she knew a way that [they] could get the money." J.A. 92. At first Elebesunu proposed robbing

---

[1] Elebesunu also was charged with using, carrying, and brandishing a firearm in furtherance of a crime of violence, a violation of 18 U.S.C. § 924(c). The Government dismissed that charge before trial.

3

the bank. And although Lewis thought she was not serious, the topic "kept coming up, and [Elebesunu was] trying to figure out how we c[ould] do it[.]" J.A. 68. Eventually Lewis and Elebesunu settled on a plan to rob an armored truck when it arrived to pick up the bank's excess funds. Because the amount of money leaving the bank fluctuated every day, and Elebesunu knew the amount ahead of time, she was to select a lucrative day for the robbery and tell Lewis. Lewis, in turn, would alert those who were to commit the robbery. After the robbery, Elebesunu was to collect her share of the proceeds from Lewis.

C.

The testimony Elebesunu challenges on appeal concerns another aspect of their break room conversation. In particular, Lewis testified that when Elebesunu first discussed robbing the bank she also told him that she had taken $50,000 in 2007 while employed as a Bank of America teller:

> [A.] And we just both started talking and just one conversation led to another.
>
> We talked about robbing [the bank]. She said she had done it [in 2007] when she was a teller, and it just went on from there. We had numerous conversations. It went on from there.
>
> Q. You said there were conversations after that?
>
> A. Yes.
>
> Q. And when you said the defendant said she had done it before, did she ever give any more

4

details about doing it before, how it was done?

A.    She said she slid it out through the drive-thru window.

Q.    And was there an amount that was discussed?

A.    I believe it was 50.

Q.    Fifty what?

. . .

[A.]   $50,000.

J.A. 67-68. During this exchange, Elebesunu did not object to Lewis' testimony. Lewis continued on direct examination:

[A.]   She didn't want to tell me about it at first. She mentioned something, but then she said I don't know if I can trust you, and then she didn't say anything else after that for about five minutes. And then she told me about the whole situation, about her doing it before.

Q.    When you say the situation before, what do you mean?

A.    About the robbery she had done before, the taking of the money at the bank when she was a teller.

J.A. 93. Again, Elebesunu did not object. Instead, she took the witness stand in her defense and denied proposing a robbery to -- or discussing any such matters with -- Lewis.

While cross-examining Elebesunu, the Government tried to elicit additional testimony about the 2007 robbery. Only then did Elebesunu object, arguing that the Government's question was "a back-door way to try to get in some [improper] 404(b)"

5

character evidence. J.A. 333. The district court, however, concluded Elebesunu had waived her Rule 404(b) objection and that the question was otherwise proper: "So in . . . terms of the 404(b) issue or the other bad acts issue, the testimony from Mr. Lewis came in without objection. . . . It sounds like the[] [Government] ha[s] a good-faith basis to ask" about the 2007 robbery. J.A. 334.[2] The district court continued: "I think it probably would have been appropriate [under Rule] 404(b). Nonetheless, again, my ruling is at this point the[] [Government] ha[s] a good-faith basis to ask the question." J.A. 335.

The jury convicted Elebesunu on both counts, and she was sentenced to 105 months' imprisonment. Elebesunu timely appealed her conviction, and we have jurisdiction under 28 U.S.C. § 1291.

---

[2] Elebesunu disputes the characterization of the 2007 event as a "robbery." She contends instead that the 2007 event more properly is characterized as a "larceny." For consistency, and because we do not believe the characterization of the event affects the outcome of this appeal, we refer to the event as a robbery throughout.

On appeal, Elebesunu contends Lewis' testimony related to the 2007 robbery was improper character evidence, which was admitted in violation of Federal Rule of Evidence 404(b).  We usually would review the admission of Lewis' testimony for abuse of discretion.  United States v. Perkins, 470 F.3d 150, 155 (4th Cir. 2006).[3]  But because Elebesunu failed to make a "specific and timely objection at trial," we review the admission of the challenged evidence for plain error.  United States v. Keita, 742 F.3d 184, 189 (4th Cir. 2014).  To prevail under the plain error standard of review, Elebesunu must show (1) that there was an error; (2) that error was plain; and (3) the error affected her substantial rights.  See Fed. R. Crim. P. 52(b); United States v. Olano, 507 U.S. 725, 731-32 (1993).  Even then, the Court will only recognize plain error that "seriously affects the fairness, integrity or public reputation of [the] proceedings."  Id. at 732.

A "plain" error is "clear" or "obvious" in the sense that it runs contrary to "the settled law of the Supreme Court or this circuit."  United States v. Carthorne, 726 F.3d 503, 516

---

[3] We have omitted internal alterations, citations, and quotations throughout this opinion.

(4th Cir. 2013). Put another way, if the district court's ruling is subject to debate, it is not plain error. See United States v. Robinson, 627 F.3d 941, 957 n.4 (4th Cir. 2010).

B.

With the highly deferential plain-error standard in mind, we turn to the substance of Elebesunu's appeal. Rule 404(b) prohibits admission of evidence of a past "crime, wrong, or other act" when it is used "to prove [the defendant's] character" and to suggest that the defendant is guilty because she must have acted consistent with that character. Fed. R. Evid. 404(b)(1). The rule permits such evidence, however, if the evidence is aimed at proving "another purpose, such as . . . motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

We have distilled the test for admissibility under Rule 404(b) into four inquiries. See United States v. Queen, 132 F.3d 991, 997 (4th Cir. 1997). First, the evidence must be relevant to some fact in issue other than the defendant's general character. Id. Second, evidence of the prior act must be "necessary in the sense that it is probative of an essential claim or an element of the offense." Id. Third, the prior-act evidence must be "reliable." Id. Fourth, the evidence's probative value "must not be substantially outweighed by

8

confusion or unfair prejudice in the sense that it tends to subordinate reason to emotion in the factfinding process." Id.

1.

With regard to the first inquiry under Queen, "[e]vidence is relevant if it has any tendency to make the existence of any determinative fact more probable than it would be absent the evidence." United States v. Van Metre, 150 F.3d 339, 349 (4th Cir. 1998). In addition, "[t]o be relevant under Rule 404(b) . . . the evidence must [also] be sufficiently related to the charged offense," id., "in terms of physical similarity or mental state," Queen, 132 F.3d at 997. Elebesunu contends that evidence of the 2007 robbery was not "sufficiently related" to the charged offense both temporally and factually. We disagree.

Our cases reflect a degree of flexibility when evaluating whether a prior bad act was "sufficiently related" to the charged offense in a temporal sense. For example, in Queen we affirmed the district court's decision to allow evidence of a prior bad act that was nearly ten years old under Rule 404(b). See Queen, 132 F.3d at 997-98; see also United States v. McLean, 581 F. App'x 228, 234-35 (4th Cir. 2014) (per curiam) (affirming the district court's decision to admit evidence of a prior conviction that was nearly six years old). The evidence at issue here was five-and-one-half years old, more recent than the evidence at issue in either Queen or McLean. And although the

9

_Queen_ court mentioned that "the defendant ha[d] spent many of th[e] intervening . . . years in prison," 132 F.3d at 998, Elebesunu does not direct us to any case that suggests the _Queen_ defendant's prison term was dispositive of the temporal analysis. We thus reject Elebesunu's attempt to undermine the challenged evidence based only on the passage of time.

In evaluating factual similarity, our test does not demand that the prior bad act be "identical" to the conduct charged, but only requires that it be "similar enough." _Van Metre_, 150 F.3d at 350. An apt example is _United States v. Bailey_, 990 F.2d 119 (4th Cir. 1993), where we held that the Government could use evidence that the defendant, a state legislator, had accepted illegal campaign contributions in the past to prove he intended to accept illegal campaign contributions in connection with the charged offense. _See_ _id._ at 123-25. Although the defendant took illegal contributions for different purposes, we connected the two events by reasoning that the evidence "involved the acceptance of money for the use of his political office." _Id._ at 124.

Both the 2007 robbery and the charged robbery are factually similar as they illustrate Elebesunu's willingness to leverage her position as a bank insider for personal gain. The two events show much more than the moral flexibility of a recidivist criminal, as Elebesunu argues. In both cases, she used a

10

position of trust, held within the same company, for her own financial gain. We therefore reject Elebesunu's factual-similarity argument, and with it her attempt to characterize the Government's evidence of the 2007 robbery as irrelevant.

2.

We next assess whether the evidence at issue was probative of an element of the crime -- that is, whether it was "necessary" when "considered in the light of other evidence available to the [G]overnment, it is an essential part of the crimes on trial, or where it furnishes part of the context of the crime." Queen, 132 F.3d at 998. The Government here submits that it used the evidence to prove an essential part of the crime on trial: Elebesunu's knowledge of and intent to enter into the conspiracy. Elebesunu contends that it was not necessary for the Government to prove either knowledge or intent because she never argued she mistakenly entered into a conspiracy with Lewis, but categorically denied that she and Lewis ever discussed robbing anything. Elebesunu's argument fails.

She pleaded not guilty to both the Hobbs Act robbery and conspiracy charges. By doing so, Elebesunu placed her intent, an element of the conspiracy charge, squarely at issue. See Queen, 132 F.3d at 997. See generally United States v. Clark, 928 F.2d 639, 641-42 (4th Cir. 1991) (listing the elements of a

11

conspiracy charge).  The Government had to prove Elebesunu intended to enter into the conspiracy.  And it used the 2007 robbery to do so because her choice to volunteer that information demonstrates the seriousness of her discussions with Lewis -- that their break room conversations were more than an idle fantasy.  It is of no moment that the evidence was not strictly necessary to the Government's case, "as Queen's second prong focuses on whether the evidence is necessary in the sense that it is probative of an essential claim or an element of the offense."  United States v. Rooks, 596 F.3d 204, 211-12 (4th Cir. 2010).  Thus, we cannot say it was plain error for the district court to conclude that the Government's evidence of the 2007 robbery was necessary to the Government's case.

3.

In examining the third Queen factor, we ask whether the evidence was clearly unreliable.  Evidence is reliable "unless it is so preposterous that it could not be believed by a rational and properly instructed juror."  United States v. Siegel, 536 F.3d 306, 319 (4th Cir. 2008).  Elebesunu attacks Lewis' testimony about the 2007 robbery as unreliable on two grounds.  First, she argues that his testimony was so vague that the jury could not have believed him.  Second, she argues that Lewis' testimony was unreliable because he was testifying under

12

a plea agreement and stood to benefit if she were convicted. Again, we disagree.

Elebesunu offers no convincing reason why Lewis' testimony was so vague that it was plainly unreliable. In effect, Elebesunu asks us to make a credibility determination and, thus, discount Lewis' testimony. But "[r]eliability is not synonymous with credibility when dealing with 404(b) evidence." Bailey, 990 F.2d at 123. And credibility issues are properly reserved for the jury. United States v. Wilson, 118 F.3d 228, 234 (4th Cir. 1997). Elebesunu offered testimony to contradict Lewis' in all material respects, and the jury found Lewis to be more credible. We cannot substitute the jury's judgment with our own.

Elebesunu's attempt to conflate reliability with bias, by arguing Lewis stood to benefit from her conviction under the terms of his plea agreement, fares no better. We have previously rejected a defendant's attempt to use the fact a witness was testifying under a written plea agreement to show that witness' unreliability. See United States v. Hadaway, 681 F.2d 214, 218 (4th Cir. 1982). In Hadaway we reasoned that "[t]he plea bargainer's position frequently makes him extremely reluctant to commit another crime or crimes and thus lay himself open to greater punishment." Id. The same logic applies here to defeat Elebesunu's contention. Thus, it was not plain error

13

for the district court to conclude that Lewis' testimony was reliable.

4.

Finally, we ask whether the evidence was so harmful, in proportion to its probative value, that it should have been excluded. See Queen, 132 F.3d at 997. Evidence is unfairly prejudicial if it harms the defendant's case "for reasons other than its probative value[.]" United States v. Mohr, 318 F.3d 613, 620 (4th Cir. 2003). And even then, evidence should be excluded only if its prejudicial effect "substantially outweighs [its] probative value." Id. Elebesunu contends that evidence of the 2007 robbery was unfairly prejudicial because, in the absence of Lewis' testimony, she likely would not have been convicted.

Although Lewis' testimony formed part of the Government's case, it is not clear that evidence's prejudicial effect substantially outweighed its probative value. But even if the evidence at issue was unfairly prejudicial, that prejudice was cured by the district court's thorough limiting instruction. "[C]autionary or limiting instructions generally obviate any . . . prejudice, particularly if the danger of prejudice is slight in view of the overwhelming evidence of guilt." United States v. Powers, 59 F.3d 1460, 1468 (4th Cir. 1995). Here, the district court gave a limiting instruction, telling the jury

14

that Lewis' testimony about the 2007 robbery was not evidence of Elebesunu's guilt:

> The Government has offered evidence tending to show that on a different occasion, the defendant engaged in conduct similar to the charges in the indictment. In that connection, let me remind you that the defendant is not on trial for committing this act not alleged in the indictment. Accordingly, you may not consider this evidence of the similar act as a substitute for proof that the defendant committed the crime charged, nor may you consider this evidence as proof that the defendant has a criminal personality or bad character. The evidence of the other similar act was admitted for a much more limited purpose, and you may consider it only for that limited purpose.

J.A. 404. And any prejudice caused by the challenged evidence was slight. Even without any evidence of the 2007 robbery, Lewis offered compelling evidence of Elebesunu's guilt. Thus, because of the limiting instruction and substantial other evidence of Elebesunu's guilt, we cannot say that the probative value of the evidence at issue was clearly and substantially outweighed by its prejudicial effect.

**\*\*\*\***

In sum, Elebesunu has not carried her burden under the plain error standard of review. She has not demonstrated that the district court made any obviously incorrect ruling on any element of the Queen test.

15

III.

For that reason, the district court's judgment is

AFFIRMED.